WALKER *v.* CITY OF PINE BLUFF.

4-8654 214 S. W. 2d 510

Opinion delivered November 15, 1948.

*John E. Hooker* and *Brockman & Brockman,* for appellant.

*Rowell, Rowell & Dickey,* for appellee.

HOLT, J. This cause comes here on a proceeding by the City of Pine Bluff to annex certain outlying and con-

tiguous territory. The question is: Was there substantial evidence to support the judgment?

The record shows that, by appropriate procedure, the electors of Pine Bluff voted for annexation of the territory involved. The County Court ordered annexation and certain property owners in the affected territory (parties to the proceedings) in apt time appealed to the Jefferson Circuit Court and upon a hearing, that court ordered "that all of the territory embraced in the petition originally filed by the City in the County Court be, and it is annexed to the City of Pine Bluff." From the judgment is this appeal.

In a case of this nature we have certain well established general rules for guidance. We have consistently held that the findings of the Circuit Court have the same weight as the verdict of a jury and therefore we must affirm the Court's judgment if we find any substantial evidence in support thereof. *City of Newport* v. *Owens,* 213 Ark. 513, 211 S. W. 2d 438, and cases there cited.

We are not called upon here to decide where the preponderance of the evidence lies.

We also have the further well established rule that "the vote of the town makes a *prima facie* case as to the propriety of the annexation. The *onus* of showing cause against it sufficient to satisfy the judgment of the County Judge was upon the remonstrants." *Dodson et al.* v. *Mayor and Town Council, Fort Smith,* 33 Ark. 508.

The correct rule to guide in determining an application for annexation was clearly stated in *Vestal* v. *Little Rock,* 54 Ark. 321, 15 S. W. 891, 16 S. W. 291, 11 L. R. A. 778, in this language: "City limits may reasonably and properly be extended so as to take in contiguous lands, (1) when they are platted and held for sale or use as town lots, (2) whether platted or not, if they are held to be brought on the market and sold as town property when they reach a value corresponding with the views of the owner, (3) when they furnish the abode for a densely-settled community, or represent the actual growth of the town beyond its legal boundary, (4) when they are needed

for any proper town purpose, as for the extension of its streets, or sewer, gas or water system, or to supply places for the abode or business of its residents, or for the extension of needed police regulation, and (5) when they are valuable by reason of their adaptability for prospective town uses;' but the mere fact that their value is enhanced by reason of their nearness to the corporation, would not give ground for their annexation, if it did not appear that such value was enhanced on account of their adaptability to town use.

"2. . . . City limits should not be so extended as to take in contiguous lands, (1) when they are used only for purposes of agriculture or horticulture, and are valuable on account of such use, (2) when they are vacant and do not derive special value from their adaptability for city uses." We reannounced this rule in the *Newport* v. *Owens* case, *supra*.

For reversal, appellants, all of whom appear to be residents of what is known as Area 7, say: "The testimony upon the whole case brings the remonstrants (appellants) within the following well recognized rules: 1. Annexation should not be made when the lands are used only for purposes of agriculture and are valuable on account of such use. 2. When they are vacant and do not derive special value from their adaptability for city use," and they assert that conditions exist in Area 7, and within the present city limits, which show that a very large portion of that area is not adaptable to city use. Much testimony is presented in the record ·which we do not detail. Its general effect is, we think, clearly summarized by the trial court in this language:

"Area 7 is contiguous to the ·City. Except for a strip 340 feet wide running along the south side of West 17th Avenue, or the Sulphur Springs road, and not far from its junction with the concrete highway to Little Rock, there is no agricultural land in the Area. Its inhabitants at times have had the services of the Pine Bluff Fire Department, and, infrequently, of its Police Department. A part of this territory drains into Hardin's Drain, another part into Brump's Bayou, and thence through sec-

tions of Pine Bluff. A large part of Area 7 is platted into lots and blocks, and much of it is rather densely settled, especially along West Sixth Avenue and in the Marsh-Fox Addition. Many of its inhabitants have water and electricity obtained from plants in Pine Bluff. Many of them work in the City, and, of course, use its streets and other facilities. The testimony is that fire insurance rates on composition roof houses outside the City is $1.14 per hundred dollars. Immediately on being annexed, that rate will decrease ten per cent., and then with fire protection, the rate will be forty-two cents per hundred.

"It is urged that much of Area 7 is vacant property. A growing City, and Pine Bluff has grown very much in the last six years, could hardly be expected to expand into territory already covered by houses. It is also urged that much of Area 7 is wooded land. In these wooded areas there are included Oakland Park, Townsend Park, and Graceland Cemetery, all of which belong to the City, and property purchased by the Chamber of Commerce for industrial uses. Besides, it is common observation that people seeking homesites would prefer to have some trees around. . . .

"A rather significant fact is that it is estimated that ten thousand inhabitants will be added to the City by this annexation; that by actual count there are 1,666 houses in Area 7 alone, and that only 348 citizens are still protesting.

"This Court can see no reason why the territory sought to be annexed and the present City of Pine Bluff cannot form a compact, homogeneous whole, and it is of the opinion that all of Area 7, as well as the other territory affected, are adaptable for city uses and represent the actual growth of the City."

There was, properly admitted, testimony of health officials and a former mayor that unsanitary conditions existed in Area 7, presenting a health menace not only to the City but to Area 7. (*Fowler* v. *Ratterree,* 110 Ark. 8, 160 S. W. 893.)

We think the findings of the trial court were amply supported by substantial evidence. The County Court

having found in favor of annexation, as did the Circuit Court on appeal, supported by substantial evidence, well within the doctrine announced in *Vestal* v. *Little Rock.* *supra,* although there is some contradictory testimony, the testimony was ample to support the judgment, and, accordingly, it is affirmed.