GARNER *v.* BENSON.

5-469                                        272 S. W. 2d 442

Opinion delivered November 15, 1954.

216

*Crumpler & O'Connor, O. E. Westfall* and *Rose, Meek, House, Barron & Nash,* for appellant.

*J. Bruce Streett, Gaughan, McClellan & Laney* and *James M. Rowan, Jr.,* for appellee.

J. SEABORN HOLT, J. This is an annexation case. December 12, 1952, the City of Camden filed petition in the Ouachita County Court to extend its boundaries by annexing two separate areas of land, Area No. 1, contiguous to the City on the west and Area No. 2, contiguous to the City on the south. The two areas are not contiguous to each other. Included in Area No. 2 is an unincorporated community known as Cullendale-Fairview area. December 20, 1952, some 746 of the electors in Cullendale petitioned the Ouachita County Court to in-

corporate. These incorporation petitioners filed a response opposing annexation of Area No. 2, alleging that an area approximately one-half mile wide and one-fourth miles long called "Two Bayou" separated the territory proposed to be incorporated from Camden and that this area was low, swampy and subject to overflow and that it constituted such a barrier as would prevent integration of Camden with it. Camden, in a response to the petition of incorporation, alleged that the value of the property in the territory to be incorporated was insufficient to furnish revenue needed to support the municipal functions of a separate town and further, such an incorporation would only duplicate municipal services and the costs thereof.

The County Court consolidated the matters for hearing and on February 12, 1953, entered its order allowing annexation of Area No. 1, denying annexation of Area No. 2, and allowing incorporation of the Town of Cullendale. Each party appealed to the Circuit Court that part of the County Court's order adverse to it.

Prior to trial in the Circuit Court, the parties waived all defects in the election except the question of the validity of the annexation election in failing to provide for separate voting on annexing Areas No. 1 and No. 2, in both the incorporation and the annexation proceedings.

The Circuit Court entered judgment on September 22, 1953, reversing the County Court, granted annexation for both Areas No. 1 and No. 2 and denied incorporation for Cullendale. This appeal followed.

For reversal, appellants say: "1. The unplatted territory, known as Two Bayou, separating the City of Camden from the territory proposed to be incorporated as Cullendale has such physical characteristics that it constitutes a barrier preventing annexation of the designated Area Two to the City of Camden. 2. The Court erred in holding that the inhabitants of Area One and Area Two would be best served by annexation to the City of Camden and that each of said Areas was adapted to and needed for municipal purposes by said City. 3. The

election held in the City of Camden authorizing the annexation of two separate areas of land known as Area One and Area Two was invalid and the Court was without power to order such annexation.''

### 1 and 3

The legal principles to guide us in annexation cases have been well established by this Court. We have consistently held that the findings of the Circuit Court have the same weight and effect as the verdict of a jury and therefore we must affirm the Court's judgment if we find any substantial evidence to support it. We are not called upon to decide where the preponderance of the evidence lies. It is further well established that the vote of the Town or City makes a *prima facie* case as to the propriety of the annexation. The burden of proof of showing cause against annexation rests upon those opposing it. *Walker* v. *City of Pine Bluff*, 214 Ark. 127, 214 S. W. 2d 510.

In our early landmark case of *Vestal* v. *Little Rock*, 54 Ark. 321, 15 S. W. 891, 11 L. R. A. 778, which has been consistently followed by this Court, legal principles were announced as a guide in annexation cases. We there said: ''That city limits may reasonably and properly be extended so as to take in contiguous lands, (1) when they are platted and held for sale or use as town lots, (2) whether platted or not, if they are held to be brought on the market and sold as town property when they reach a value corresponding with the views of the owner, (3) when they furnish the abode for a densely-settled community, or represent the actual growth of the town beyond its legal boundary, (4) when they are needed for any proper town purpose, as for the extension of its streets, or sewer, gas or water system, or to supply places for the abode or business of its residents, or for the extension of needed police regulation, and (5) when they are valuable by reason of their adaptability for prospective town uses; but the mere fact that their value is enhanced by reason of their nearness to the corporation, would not give ground for their annexation, if it

did not appear that such value was enhanced on account of their adaptability to town use.

"2. We conclude further that city limits should not be so extended as to take in contiguous lands, (1) when they are used only for purposes of agriculture or horticulture, and are valuable on account of such use, (2) when they are vacant and do not derive special value from their adaptability for city uses. *People* v. *Bennett*, 29 Mich. 451, 18 Am. Rep. 111; *Cheaney* v. *Hooser*, 9 B. Mon. (Ky.) 330; *City of Southgate*, 15 B. Mon. (Ky.) 491; *Morford* v. *Unger*, 8 Ia. 82; *New Orleans* v. *Michoud*, 10 La. Ann. 763; *Bradshaw* v. *Omaha*, 1 Neb. 16.

"By contiguous lands we understand such as are not separated from the corporation by outside land; and we think the statute permits the annexation of any such lands, and that the court is justified in making an order to annex them, whenever they are so situated with reference to the corporation that it may reasonably be expected that after annexation they will unite with the annexing corporation in making up a homogeneous city, which will afford to its several parts the ordinary benefits of local government."

Without attempting to detail the testimony presented in the voluminous record before us, it suffices to say that we find ample substantial evidence to support appellees' petition for annexation of both areas.

C. E. Malone, a licensed engineer of wide experience, testified that the Two Bayou Area No. 2 "is suitable for industrial development," that it was the natural drainage between Cullendale and Camden and that the trunk line sewer being built (at the time) by Camden was located in the Two Bayou Area. Another engineer, Marion L. Crist, an expert on municipal water and sewerage problems, testified that the proposed site of the sewer line was along Two Bayou Creek and that the sewerage line then under construction followed this Creek. The testimony of these two witnesses was corroborated by the Secretary-Manager of the Camden

Chamber of Commerce and former Mayor D. W. Harrell, a real estate broker with years of experience.

There was also evidence from an abstracter, Mr. Watts, tending to show that a portion of Two Bayou is already within the city limits. All witnesses seemed to agree that the land in question was unsuitable for agriculture or horticulture and that it derived its value largely from prospective and present urban use.

Walter Tate, a resident of Cullendale since 1889, testified that the physical aspect of Two Bayou Creek would not prevent Cullendale and Camden from being unified or to prohibit social and economic intercourse between them. Homer Anderson, County School Supervisor, corroborated Mr. Tate, and that annexation would have no effect on the school systems.

Mayor W. H. Laney (who favored annexation) testified: ''I will say, more than that, that this area (Two Bayou Area No. 2) is not a barrier to the unity of the two communities for the further reason that ofttimes a problem, or difficulty, can be a matter that will bind two communities closer together than possibly they would be without that problem, or that difficulty. Camden has gotten through spending $192,000.00, one of the big effects of which is to take raw sewerage out of this bayou. Raw sewerage has gone down the bayou for the last 6 or 8 years, has been a menace to the health of the present City of Camden, and to the area that we designate as Area 2. We have cleaned that situation up, or are in the process of doing it, but should the community to the South of that area dump raw sewerage into the same bayou, you would have the same problem all over again. In other words, it presents a problem that actually binds the two communities closer together than if the problem, itself, did not exist. It is presently a breeding place for mosquitoes. When the wind comes from the North they go to Cullendale; when it comes from the South it winds up in Camden. From a health standpoint that area presents a challenge to both communities that can never be solved or worked out, except by the two joining hands. . . .

"In other words, the people of Camden, and the people of the community out there, they are vitally interested in it too, in Area 2—both have come to the crossroads in their development and progress; and I think the proper answer or solution of it at this time is of first magnitude. And I think it will affect, not only the people living in these two areas today, affect them not only today, this year, or next year, but it is something that will leave its mark on these communities for 50 or 60 years. And the establishment of another municipality, that is an out-growth of this municipality, and has virtually all of its interests in common with this municipality; has all of its future in common with Camden and this municipality."

There was evidence that there were densely inhabited residential and business sections in Area No. 2, that there were 843 telephones, 1,065 light meters and 1,601 gas meters, about 1,275 homes and approximately 60 businesses in the area. The area also has several miles of paved roads and in case of annexation, there was evidence that fire insurance rates would drop from $9.00 to $7.20 per thousand. Most of the area has been subdivided and is now held for sale as town lots and that much of the growth of this area represented the city's growth outside its limits. Its inhabitants have had the services of the Camden Fire Department and many work within the City of Camden and approximately 4,000 persons in the area would be added to Camden and the City of Camden is growing and needs the territory for expansion. That this area at present, Two Bayou, presents a hazard to the health, peace and comfort of the inhabitants of both Camden and Cullendale is supported by abundant testimony, and annexation would afford Camden the opportunity to remove such hazards and reclaim this territory for urban uses, which the record reflects it proposes to do.

We hold that territory to be annexed need only be contiguous to the corporation to which annexation is sought. When two separate areas are sought to be annexed, as here, they were not required to be contiguous

to each other, but only be contiguous to the City under the plain terms of § 19-307, Ark. Stats., 1947, which provides: "When any municipal corporation shall desire to annex *any contiguous territory thereto,* lying in the same county, it shall be lawful for the Council to submit the question to the qualified electors at least one month before the annual election."

Had it been thought necessary that such areas be contiguous to each other, it would have been easy to have so provided.

Appellants' contention that the voters should have been given the opportunity to vote on each area separately is, we think, untenable, in the circumstances here. We can see no valid objection to the annexation of more than one area at the same time under one petition and vote of the people as was done here. Such, in effect, was permitted in *Walker* v. *City of Pine Bluff, supra.* In that case, it appears that seven different areas were proposed for annexation and submitted as one question to the electors and we upheld the judgment of the trial court ordering annexation. See, also, *Burton* v. *City of Fort Smith,* 214 Ark. 516, 216 S. W. 884, and *Marsh* v. *City of El Dorado,* 217 Ark. 838, 233 S. W. 2d 536.

The fact that the Cullendale area No. 2 is separated from Camden by a Creek was not fatal to annexation. In the Vestal case, *supra,* it appears that the City was on one side of the Arkansas River and a part of the land sought to be annexed on the other and we there said: "But we do not think this fact conclusive that the lands are not contiguous within the meaning of the act (§ 19-307, Ark. Stats., 1947)."

Affirmed.

Justice George Rose Smith not participating.