## CITY OF CROSSETT, Arkansas *v.* C. W. ANTHONY et al

5-5488                           466 S. W. 2d 481

Opinion delivered May 10, 1971

*Thomas S. Streetman,* for appellant.

*W. P. Switzer,* for appellees.

J. Fred Jones, Justice. At a special election, properly called for the purpose, the electors of the City of Crossett, Arkansas, voted in favor of annexing two areas to the City of Crossett. One of the areas lay north of the present city limits and is referred to as "North Crossett." The other area lay south of the present city limits and is referred to as "South Crossett." Both North and South Crossett are contiguous to the present corporate limits but not to each other.

Following the election the City Council, hereafter called "City," filed its petition for annexation in the Ashley County Court as provided by statute (Ark. Stat. Ann. §§ 19-302—19-307 [Repl. 1968]). The county court gave due notice of a hearing on the petition and C. W. Anthony, Harold Bryant, Nolan Jeffress, W. M. Stover and Chesley Peters filed a response in opposition to the petition. The two areas involved were treated as separate cases and the county court denied the petition as to both North and South Crossett. The City appealed to the circuit court where the cases were consolidated for trial and the petition as to both areas was also denied by the circuit court on trial de novo. The City has appealed to this court and relies on the following points for reversal:

"Lower court erred in denying appellant's motion to dismiss contest as to South Crossett for lack of standing to sue by appellees.

There is no substantial evidence to support the findings of the trial court as to:

A. North Crossett.
B. South Crossett."

We agree with the City on its first point, but we must affirm the judgment of the trial court as to North Crossett.

The fact situation in this case presents a rather unique problem for the City of Crossett. The Georgia Pacific Corporation and its predecessor, Crossett Lum-

ber Company, apparently at one time owned all lands inside the present city limits of Crossett as well as most of the surrounding lands in the area. Georgia Pacific still owns all the vacant land inside the corporate limits of Crossett, and from time to time develops, and sells to individuals, such residential and business lots as it considers necessary for the orderly growth of Crossett and as it considers the demand and need exists. It appears from the record that Georgia Pacific places certain restrictive covenants in its deeds of conveyance apparently designed to control a uniform and orderly construction of homes in connection with adjacent areas of the city. As Georgia Pacific develops and sells lots from its lands inside the city, it constructs streets and extends utilities, all of which apparently goes into the cost price of the lots; thereby leaving a prospective purchaser with the option of purchasing a lot from Georgia Pacific inside the present city limits or going outside the city limits where there is more competition in the open market for building lots and where there is more latitude in restrictive use covenants or none at all. As a result the City of Crossett has actually expanded, and continues to expand, in a haphazard manner beyond its corporate limits, both north and south along the highways, and into areas unplanned and unrestricted as to use, zoning, location or structure. It is apparent from the overall record before us that Crossett could very easily be swallowed up by slums over which it has no control and in which it has no legal jurisdiction.

The guide lines for the annexation of contiguous property to a town or city as laid down in the case of *Vestal* v. *Little Rock,* 54 Ark. 321, 15 S. W. 891, have been so consistently followed by this court since the rendition of the *Vestal* decision in 1891, that we deem it unnecessary to repeat them here. See *Mann* v. *City of Hot Springs,* 234 Ark. 9, 350 S. W. 2d 317, and *Planque* v. *City of Eureka Springs,* 243 Ark. 361, 419 S. W. 2d 788. It is also well settled that the vote of electors favoring annexation makes a *prima facie* case for annexation and the burden rests on those objecting, to produce sufficient evidence to defeat the *prima facie* case. *Mann* v. *City of Hot Springs* and *Planque* v. *City of Eureka*

*Springs, supra.* This burden of proof does not shift but remains the same when tried in the circuit court de novo on appeal from the county court, *Marsh* v. *City of El Dorado,* 217 Ark. 838, 233 S. W. 2d 536, and the circuit court findings have the same weight and effect as the verdict of a jury. In such situation we are not called upon to decide where the preponderance of the evidence lies, but we are obligated to affirm the trial court's judgment if we find any substantial evidence to support it. *Garner* v. *Benson,* 224 Ark. 215, 272 S. W. 2d 442.

We render no opinion as to whether the City of Crossett fully met the guide lines for annexation as laid down in *Vestal, supra,* for that is not the question before us on this appeal. We are not called on to determine whether the trial court erred in *granting* the petition; we are called on to determine whether the trial court erred in denying it. We now proceed to the questions that are before us.

Ark. Stat. Ann. § 19-102 (Repl. 1968) provides that "any person interested may appear and contest the granting the prayer. . ." So, the first question is whether the protestants have such interest that entitles them to contest the petition on appeal in circuit court for the annexation of South Crossett. We are of the opinion that they have shown no such interest.

In the early case of *Perkins, et al* v. *Holman, et al,* 43 Ark. 219, Perkins and 36 other persons attacked the annexation of territory to the incorporated town of Locksburg through certiorari for the want of notice prescribed by law and for other causes. After the proceedings and orders of the county court had been certified up, the defendants filed a motion to quash the writ of certiorari—in legal effect a demurrer to the petition—because it appeared that the judgment and proceedings were regular and in pursuance of law. The motion was sustained and the petition dismissed. In affirming the trial court, this court said:

"Without considering the merits of the controversy, there is one insuperable obstacle in the way of re-

versing the judgment below. Neither the petition, nor any other part of the record, shows that the petitioners have any interests to be affected by the determination of the question sought to be presented. It is not alleged that they, or any of them, reside, or own property, either in the old town, or in the territory proposed to be annexed. It does not appear what right the petitioners have to interfere to prevent annexation. This is a subject upon which no presumptions can be indulged by an appellate court. There must be a substantial error, injurious to the appellants, before we can disturb the judgment of the Circuit Court."

In the case at bar all of the protestants testified. Their testimony was confined to where they lived and owned property. Mr. Anthony testified that he lived on Route 3, North Crossett, but not within the area subject to annexation. He testified, however, that he did own a business inside this area of North Crossett, but owns no property in South Crossett. Mr. Bryant testified that he lives in the North Crossett area under consideration for annexation and has never resided or owned property in South Crossett. Mr. Jeffress testified that he lives in North Crossett in the area subject to annexation and that he does not live or own property in South Crossett. Mr. Stover testified that he lives in North Crossett in the area subject to annexation and does not reside or own property in South Crossett. It was stipulated that Mr. Peters resides in North Crossett in the area subject to annexation and that he does not live or own property in South Crossett.

The City of Crossett filed a motion in the circuit court which reads, in part, as follows:

"That in their response to the petition for annexation the above named respondents state that they are residents and property owners in the area proposed to be annexed and described in the petition for annexation filed herein by petitioners; that the proof before the court establishes conclusively that none of the respondents were residents of or prop-

erty owners in the area commonly known as South Crossett in this annexation action and more particularly described as being all of the Southwest Quarter of Section 29, Township 18 South, Range 8 West lying South of the existing city boundary of the City of Crossett and the Northwest Quarter of Section 32, Township 18 South, Range 8 West.

That no party to this action has shown any standing to contest the annexation of the area known as South Crossett and the contest as to that area ought to be dismissed and the area deemed to be annexed to and a part of the City of Crossett, Arkansas.

WHEREFORE, petitioner moves the Court to grant its motion dismissing the contest as to the area described above and known as South Crossett for the reasons hereinabove stated."

While it is true that these protestants filed their protest for themselves and *others similarly situated,* they do not reside or own property in the South Crossett area subject to annexation or within the present city limits of the City of Crossett. We are of the opinion, therefore, that the protestants, for themselves as well as for others similarly situated, have not shown such interest within the meaning of the statute that would permit them to question the propriety of the annexation of an area to a city in which they have shown no interest in the city or in the area to be annexed. If these protestants have such interest, there would be no reason why any other citizen within the trade area of Crossett; or indeed within Ashley County, would not also have such interest. We hold, therefore, that "any person interested" as referred to in the statute, means any person who actually has some interest in the city or in the area to be annexed, and that at least some such interest must be shown on trial de novo in the circuit court in the face of a motion to dismiss for lack of interest.

As to the North Crossett area, the case of *Pine Bluff* v. *Mead,* 177 Ark. 809, 7 S. W. 2d 988, is very much in point. In that case the majority of electors in

Pine Bluff voted to annex contiguous territory. The county court approved the annexation and on appeal to the circuit court conflicting evidence was submitted on trial de novo and the petition was denied. After reciting the conditions under which it is proper for the boundaries of a city or town to be extended as laid down in *Vestal* v. *Little Rock, supra,* this court in *Mead* said:

> "We think it unnecessary to set out or to review the testimony offered in support of and in opposition to the prayer of the petition for annexation. We are of the opinion that by far the greater part of the territory involved is shown, under the tests announced by Judge Hemingway, by the great preponderance of the evidence, and much of it by the undisputed evidence, to be territory which should be annexed to the city. But, before we could reverse the finding and judgment of the circuit court, we would have to say that all of the land included in the petition was adapted to urban uses.

> We do not interpret the court's finding as meaning that none of the land embraced in the petition was adapted to urban uses, but only that lands were included in the petition which should not have been, and, if that finding is supported by substantial testimony, we must affirm the judgment of the circuit court, which denied the prayer of the petition. *Brown* v. *Peach Orchard,* 162 Ark. 175, 257 S. W. 732.

> There was testimony that a forty-acre tract of land owned by W. M. Simpson is unplatted and is used exclusively for agricultural purposes, and its present value is due to that use and is not attributable to its adaptability for urban purposes. Similar testimony was offered as to certain other tracts of land.

> This testimony was not undisputed. On the contrary, the testimony on the part of the petitioners was to the effect that all this land was adapted to urban uses and derived its principal value from that fact. But we are required to affirm the judgment of

the court below if it is supported by substantial testimony, and it is so supported.

In the Vestal case, *supra,* this court on the appeal held that most of the territory embraced in the annexation petition should properly have been annexed, including a forty-acre tract of land which was said to be vacant, low, flat, wet, and covered with timber, but the judgment of the circuit court which had affirmed the order of the county court annexing the unincorporated town of Argenta to the city of Little Rock, was reversed because another forty-acre tract of land was embraced in the annexation petition, and the court found that the owner of this land had no need of local government and the city had no need of his land.

A similar finding was made by the court below as to certain agricultural land included in the petition, and, as there is substantial testimony to support that finding, the judgment must be affirmed, and it is so ordered."

In the case at bar the trial court found, among other things, as follows:

"The principal area sought to be taken is North of the City of Crossett containing about 2000 acres of the total acreage sought. A part of this area, lying along U. S. Highway 82, is densely populated and there are several platted additions and a street system in this area. On the other hand, there are extensive areas that are not densely populated or populated at all and which are not served by streets or municipal services or adjoined by platted additions. There are more than 327 acres of timber land in the North Crossett and 123.84 acres in the South Crossett area according to the testimony of the county tax assessor and 355 acres of open unimproved land, possibly farm lands, in the North Crossett area according to the testimony of the Manager, U. S. Department of Agriculture office.

\* \* \*

> . . . a large portion of the areas sought to be annexed include a large part, possibly as much as 800 acres, in vacant, unimproved, open land, under cultivation or in timber and uninhabited and not served with streets or roads and which is not suitable for annexation.

* * *

> This is not to say that a part of the proposed area is not suitable for annexation but because of the large portion that is not suitable this court has no alternative but to deny the petition of the City of Crossett for annexation in its entirety and in this respect the motion of the city to dismiss as to the South area should be denied.''

Mr. Harold Bryant, in surrebuttal, testified that there is some farm land under cultivation in the North Crossett annexation area. He testified that a Mr. Mann owns 40 acres within the area which he uses for pasturing cows and horses; that a Mr. Barnett lives within the proposed annexation area and owns 60 acres of which about 40 acres is in cultivation; that Tommy Barton lives within the area and owns about 120 acres which he also uses for pasture. He testified that Belouts have 60 acres within the area which is not being used for anything now, but which has been used for pasture. He testified that Dr. Barnes' estate consisting of 79 acres of open land is within the area but that it is not being used for pasture. He testified that Sonny Courson has about 20 acres within the area which has been used in the past for horse pasture.

None of the vacant land owners testified and there is no evidence in the record as to enhancement of land values because of adaptability to municipal inclusion. It was stipulated that Mr. J. C. McGoogan, a real estate agent, if called as an expert witness, would testify that the highest and best use of the undeveloped land within the proposed annexation area would be for residential and commercial purposes.

Mr. Joe West was the only witness who lived or owned property in South Crossett. His testimony was directed primarily to the water system now in use in South Crossett. He also testified that a petition was circulated in South Crossett and a majority of the residents signed the petition opposing annexation.

Certainly if the trial court had granted the petition for annexation, there would have been substantial evidence to support such judgment—but that is not the case. The trial court denied the petition and as we said in *Mead*, "before we could reverse the finding and judgment of the circuit court, we would have to say that all of the land included in the petition was adapted to urban use." We cannot say this for the reason that there is substantial evidence that some of the land in the North Crossett proposed annexation area is not adapted to urban use.

The judgment as to North Crossett is affirmed and the judgment as to South Crossett is reversed. This cause is remanded to the trial court for entry of an order annexing South Crossett to the City of Crossett.

Affirmed in part; reversed in part and remanded.

GEORGE ROSE SMITH, BROWN AND BYRD, JJ., dissent.

CONLEY BYRD, Justice, dissenting. I disagree with that portion of the majority opinion holding that the trial court should have annexed the South Crossett area. The error of the majority opinion is that it considers the property owners as the appellant in the circuit court whereas in fact the city was the appellant and as such had the duty under Ark. Stat. Ann. § 19-101 to notify all interested persons by newspaper publication of the time and place of the hearing it desired the court to hold. If the county court had ordered the annexation of the South Crossett area then *Perkins v. Holman*, 43 Ark. 219 (1884), would be authority for the position here taken. However, the appellant here was also the appellant in the circuit court and in that case the matter stood for trial de novo, as if it had originally been

brought in that court, see *Pike* v. *City of Stuttgart,* 200 Ark. 1010, 142 S. W. 2d 233 (1940), upon the petition of the city for annexation.

Ark. Stat. Ann. § 19-307, authorizing annexation by a city, provides that after a favorable vote the city must present a petition to the county court praying for such annexation and that the procedure in the county court shall, so far as applicable, be had in accordance with Ark. Stat. Ann. § 19-101 to 19-103 (Repl. 1968).

So far as here applicable Ark. Stat. Ann. § 19-101 provides:

". . . When any such petition shall be presented to the court, they shall cause the same to be filed in the office of the County Clerk, to be there kept, subject to the inspection of any person or persons interested, until the time appointed for the hearing thereof; the court shall, at or before the time of such filing, fix and communicate to such petitioners or their agent, a time and place for the hearing of such petition, which time shall not be less than thirty [30] days after the filing of such petition, and thereupon the petitioners or their agent shall cause a notice to be published in some newspaper of general circulation in the county, not less than three [3] consecutive weeks; and, if there is no newspaper of general circulation in the county, a notice shall be posted at some public place within the limits of said proposed incorporated town for at least three [3] weeks before the time of such hearing which notice shall contain the substance of said petition, and state the time and place appointed for the hearing thereof."

Ark. Stat. Ann. § 19-102 provides:

"Every such hearing shall be public, and may be adjourned from time to time, and any person interested may appear and contest the granting the prayer of said petition; and affidavits in support of or against said petition, which may be prepared and

submitted, shall be examined by said court, and they may, in their discretion, permit the agent or agents named in the original petition to amend or change the same, except no amendment shall be permitted, whereby territory not before embraced shall be added, or the character of the proposed incorporated town changed from special to general, or from general to special, without appointing another time for hearing, and requiring new notice to be given as above provided."

There is no statutory procedure for an appeal by the city to the circuit court from the county court's denial of a petition for annexation. Its only right of appeal is that set forth in Article 7, § 33 of the Constitution which provides:

"Appeals from all judgments of county courts. . . may be taken to the circuit court under such restrictions and regulations as may be prescribed by law."

In *Pike* v. *City of Stuttgart, supra,* we pointed out that the procedure in the circuit court would be the same as that set out in Ark. Stat. Ann. §§ 19-101 to 19-103 for the procedure in the county court. This would require the city to again comply with the notice required by Ark. Stat. Ann. § 19-101.

Under the procedure outlined above, Joe West had a right to appear at the public hearing required by Ark. Stat. Ann. § 19-102, *supra,* and without formal pleading to protest the annexation. I submit that when the county court sustained his objection and the city appealed to the circuit court under Art. 7 § 33, *supra,* Mr. West had the same right to appear and protest at the public hearing required by Ark. Stat. Ann. § 19-102. Mr. West did appear in the circuit court to register his protest and testified that by a petition circulated an overwhelming majority of the people of South Crossett opposed the annexation.

In the case of *Perkins* v. *Holman,* 43 Ark. 219, relied upon by the majority, the county court had approved

the annexation and the persons objecting to the annexation and wishing to appeal to the circuit court neither lived nor owned any land in the affected territory. This court there properly held that the objectors had no standing in the circuit court to complain of the annexation by the county court. The distinction between the Perkins case and the one at bar is that the city was the petitioner in both the county court and the circuit court and that under Ark. Stat. Ann. § 19-102, *supra*, Mr. West had a right to appear and be heard.

Another and totally different reason for sustaining the circuit court's findings is that by Ark. Stat. Ann. § 19-103, the court is required to find, as a prerequisite to annexation, that it is "right and proper" to annex the territory in question to the city. Here the testimony as to South Crossett was much the same as that on North Crossett area.

For either or both of the foregoing reasons, I dissent.

GEORGE ROSE SMITH and BROWN, JJ., join in this dissent.