158

*In re* CAROL STREAM FIRE PROTECTION DISTRICT.—(LUCY M. WHITTAKER *et al.*, Petitioners-Appellants, *v.* KENNETH DE JONG, Objector-Appellee.)

Second District (1st Division)    No. 75-399

Opinion filed April 1, 1977.

Stewart H. Diamond, of Ancel, Glink, Diamond & Murphy, of Chicago, for appellants.

Kalinich, McClusky & Mehling, of Glen Ellyn, for appellee.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

The appellants, who are two signers of a petition requesting annexation of territory to the Carol Stream Fire Protection District, and the Carol Stream Fire Protection District (hereinafter FPD), appeal from an order declaring the results of an election which denied annexation of certain territory to the district. The principal issue is whether various parcels of land included in the petition for annexation, which are contiguous to the district boundaries but in some instances physically separated from each other, may be considered as one territory to be annexed upon the total majority vote of qualified voters in all of the lands described. This appears to be a question of first impression in Illinois and involves the interpretation of sections 1 and 3 of "An Act in relation to fire protection districts" (Ill. Rev. Stat. 1973, ch. 127½, pars. 21, 23).

Section 3 provides that proceedings for the annexation of "additional contiguous territory" to a fire protection district may be initiated by the filing of a petition in the circuit court signed by one percent or more of the legal voters residing in the territory to be annexed. The petition shall request the court to submit to the legal voters of the proposed additional territory the question whether the territory shall become part of a particular fire protection district and assume a proportionate share of the district's bonded indebtedness. Section 3 also provides that the hearing on the petition and the election "shall be carried out in the manner described in section 1," which governs the organization of fire protection districts, "as nearly as may be." Section 1 provides, as material, for the establishment of separate voting precincts for voters residing in unincorporated areas and voters residing in a city, village, or incorporated town.

The petition, filed on February 20, 1975, contained the signatures of more than one percent of the legal voters residing within the territory described and sought to be annexed. In the petition the "territory" was "generally described as that land which is not now presently annexed to the Carol Stream Fire Protection District lying south of North Avenue, north of Geneva Road, east of Gary Avenue and west of Bloomingdale Road, and a parcel of property lying south of North Avenue just east of its intersection with St. Charles Road * * *." The particular legal descriptions were appended to the petition. All of the property described in the petition was contiguous to the FPD. A substantial portion of the area bounded by North Avenue, Geneva Road, Gary Avenue, and Bloomingdale Road was already part of the FPD. From the record, it appears that the proposed annexation of the various parcels described in the petition was designed to regularize the boundaries of the district and

to eliminate certain unannexed "islands" completely surrounded by FPD land. Some of the land described was within Milton Township; some, within Wayne Township. Within Milton Township, some of the land was within the corporate limits of the Village of Carol Stream; some, outside the village. Several of the incorporated parcels were contiguous to unincorporated parcels.

The hearing on the petition proceeded without objection, and the trial judge ordered the question of the annexation of the subject property submitted to the voters in the territory to be annexed at a general election to be held on April 26, 1975. The order established three election precincts in the subject territory. Precinct 1 included all of the residents of the parcels within the village limits of Carol Stream. Precinct 2 included all of the residents within the unincorporated territory of Du Page County lying within Milton Township. Precinct 3 included all of the residents within unincorporated Du Page County lying within Wayne Township. When the court convened to canvass the returns on April 29, 1975, the objector, a resident of Precinct 2, entered his appearance.

Canvassing the votes of the election, the court entered an order which declared the results of the election:

     Precinct No. 1: For 54 Votes  Against  0 Votes
     Precinct No. 2: For 58 Votes  Against 79 Votes
     Precinct No. 3: For  0 Votes  Against  0 Votes

The court then ordered the land contained within Precincts 1 and 3 annexed to the FPD. It held, however, over petitioners' objection that Precinct 2 would not be annexed since a majority of the voters in that precinct had voted against annexation. No cross-appeal has been filed as to the annexation of Precincts 1 and 3.

In this appeal the petitioners first argue that the outcome of an election to annex land to a fire protection district is to be determined by the total majority of votes in all of the election precincts of the territory in which the election is held. They reason that several pieces of land all contiguous to a fire protection district need not be contiguous to each other to form a "territory." They also argue in this connection that, particularly where it is impossible to determine whether the voters in the separate parcels were for or against annexation, the majority vote in the totality of the described areas must govern. The objector contends, however, that the "territory" described in the statute means a single body of land, not any number of parcels wholly disconnected from each other; and that the area contained within Precinct 2 may not be annexed contrary to the will of its inhabitants.

■■ The rule has been often stated that in construing a statute we must ascertain and give effect to the legislative intent as expressed in the statute and as determined from the reason for the enactment and the meaning of

the words used in the context of the statute. *In re Roberts Park Fire Protection District*, 61 Ill. 2d 429, 437-38 (1975).

Section 1 (Ill. Rev. Stat. 1973, ch. 127½, par. 21) establishes certain qualifications for the creation of fire protection districts:

"(1) an area of contiguous territory in a county, or in more than one but in not more than 5 counties; (2) so situated that the destruction by·fire of the buildings and other property therein is hazardous to the lives and property of the public; (3) so situated that the acquisition, establishment, maintenance and operation of a fire station or stations, facilities, vehicles, apparatus and equipment for the prevention and control of fire therein will conduce to the promotion and protection of the health, safety, welfare and convenience of the public; (4) so situated that it does not divide any city, village or incorporated town, but, in the case of a city, village or incorporated town situated partly within and partly without one or more existing fire protection districts, such territory shall not be considered as dividing the city, village or incorporated town if it includes all of the city, village or incorporated town situated outside of any existing fire protection district; (5) so situated that such territory contains no territory included in any other fire protection district, * * *."

Section 3 (Ill. Rev. Stat. 1973, ch. 127½, par. 23) provides for annexation of territory to the district, and states in pertinent part:

"Additional contiguous territory having the qualifications set forth in Section 1 may be added to any fire protection district as provided for in this Act in the manner following:

One percent or more of the legal voters resident within the limits of such proposed addition to such fire protection district may petition the court of the county in which the original petition for the formation of such fire protection district was filed, to cause the question to be submitted to the legal voters of such proposed additional territory whether such proposed additional territory shall become a part of any contiguous fire protection district organized under this Act and whether the voters of such additional territory shall assume a proportionate share of the bonded indebtedness of such district. Such petition shall be addressed to the court and shall contain a definite description of the boundaries of the territory to be embraced in the proposed addition and shall allege facts in support of such addition.
 * * *

Notice shall be given by the court, or by the circuit clerk or sheriff upon order of the court of the county in which such petition is filed, of the time and place of a hearing upon the petition in the

manner as provided in Section 1. The conduct of the hearing and the manner of conducting a subsequent election on the question whether the proposed additional territory shall become a part of the fire protection district, shall be carried out in the manner described in Section 1, as nearly as may be, * * *

If a majority of the votes cast at such election upon the question of becoming a part of any contiguous fire protection district are in favor of becoming a part of such fire protection district * * * such proposed additional territory shall be deemed an integral part of such fire protection district * * *."

The provisions for election contained in section 1 (referred to in section 3) provide:

"The court shall establish and fix the boundaries of one or more voting precincts within the proposed fire protection district and shall designate one polling place for each precinct * * *. If a city or village or incorporated town or any part thereof is included in the territory proposed as a district, then the court shall provide separate voting precincts and polling places for voters residing in that city or village or incorporated town and those residing without that city or village or incorporated town. * * * If no city or village or incorporated town nor any part thereof is included in the territory proposed as a district and the majority of the votes cast at such election upon the question shall be in favor of the incorporation of the proposed fire protection district, or of a city or village or incorporated town or any part thereof is included in the territory proposed as a district and a majority of the votes cast at such election upon the question, within the limits of each city or village or incorporated town and also a majority of those cast outside the limits of each such city or village or incorporated town shall be in favor of the proposed fire protection district, the district shall thenceforth be deemed an organized fire protection district under this Act * * *."

■■ The petitioners argue that section 3 clearly provides that annexation is in accordance with "a majority of the votes cast at such election," not on a precinct by precinct basis. They point out that the statute contemplates separate voting precincts and separate counts within the limits of each municipality and outside of such limits when the district is originally formed as provided in section 1; but that the clear instruction which appears in section 1 does not appear in section 3 which relates to an annexation election. We agree that if the area in which the election is to be held is qualified for annexation, the majority of the votes cast in that territory as a whole shall govern.

The propriety of including two or more areas of land which are

contiguous to the annexing body but not contiguous to each other as a single "territory" is a question which has been addressed under other statutes.

Each of the parties has directed our attention to cases decided under other types of annexation statutes which they urge are applicable here. Petitioners cite a case in this district which dealt with provisions of the school code for detachment and annexation of "territory," *Streator Township High School District v. County Board*, 14 Ill. App. 2d 251, 256-57 (1957), as authority for the argument that two tracts each contiguous to the school district but not contiguous to each other would be considered a "territory." In *Streator*, the court stated (page 257):

> "We find that the legislature, in using the word 'territory' has expressed itself with sufficiency. A territory is by definition a large extent of land, a region, or district. The word 'territory' as used in the statute denotes then not just a single tract of land but rather the composite of all the tracts of land included in a petition to detach. It is our conclusion that a 'territory' might well include one or more separate and distinct tracts of land, and that these separate and distinct tracts when combined in a petition to detach constitute the 'territory' contemplated by the legislature. It is from this tract or combination of tracts, comprising the 'territory' that the petitioners constituting two-thirds of the legal voters in the territory or all of the record owners of land in the territory shall come.
>
> Plaintiffs contend that it would be possible for two-thirds of the voters to bring with them into another school district, legal voters who have no desire to be detached from the district of which they were a part. This is very true yet such a result is inevitable even if the plaintiffs' theory of construction were adopted. If this objection be a shortcoming and work a hardship upon anyone, the remedy is legislative rather than judicial."

The court further noted (at pages 257-58) that a contrary ruling would result in a multiplicity of suits.

While the quoted language lends support to petitioners' theory of the case, it is not decisive because of factual differences. Following the provisions of the school code then in effect, boundary changes could be initiated by a petition of two-thirds of the legal voters residing in any territory proposed to be detached from one or more districts. The court observed that the petition in *Streator* was, in fact, executed by more than two-thirds of the legal voters in each of the two separate tracts of land which were sought to be detached (14 Ill. App. 2d 251, 253). Thus, as the court noted (at page 257), a holding that there should have been two separate petitions instead of one would have tended to exalt form over substance since the effect of the proceedings with regard to those voters

who were not in favor of the petition would be unaltered whether there were two petitions or one.

The objector on the other hand relies on *Krupp v. Taylor*, 20 Ill. App. 2d 282, 286-87 (1959), for the holding that "territory" in a proceeding for annexation under the Municipal Code contemplates parcels of land which are all contiguous to one another as well as to the annexing body. In *Krupp* the court stated at page 287:

> "For the reasons given, it is our opinion that the word, 'territory,' in this Annexation Act, contemplates a contiguous tract and that it was error to combine the two tracts and to count the signers as one group. Accordingly, the orders of the County Court on this proceeding are reversed and the proceedings hereby declared void.
>
> We are not unmindful of the fact that another appellate district court has construed the word 'territory,' in the case of Streator Township High School Dist. No. 40 v. County Board of School Trustees of Livingston County, 14 Ill. App. 2d 251, 144 N.E.2d 531, holding that it may include two tracts. However, in that case the court was considering the School Code. Ch. 122, Sec. 4 B—2, Ill. Rev. Stat. We express no opinion on that type of situation, which is not before us, except to point out that there are many situations under the School Code in which property may be attached or detached to districts against the desires of the inhabitants where the good of the school district appears to require such action.
> * * *"

In *Krupp*, the court reasoned that the municipal annexation statute taken as a whole expressed the intent that the property could not be annexed against the will of the inhabitants. But an even more cogent reason for the holding was that the municipal code provided that where an objector's property was on the perimeter of the territory to be annexed, he could object if the "exclusion of his land will not destroy contiguity of the property." The court reasoned that since a property owner on the perimeter could not be forced into annexation against his will, it would be inconsistent to say that another owner outside of the perimeter could be forced in along with that territory. The court also viewed the requirement that the exclusion would not destroy the contiguity of the remaining property as a clear implication that the territory sought to be annexed was intended to be a contiguous tract. 20 Ill. App. 2d 282, 287.

■■ Each of the parties has cited cases from other jurisdictions which have concluded that separate parcels may or may not be included in a single petition to annex territory under various annexation statutes.

Because of the variance in statutory language and legislative purposes these authorities are of little assistance in deciding this case. Many of the cases cited by the objector, for example, are based upon statutes which require that the annexed territory be "compact," a requirement which is omitted from section 3 of the act before us. (*Cf. Western National Bank v. Village of Kildeer*, 19 Ill. 2d 342, 350-52 (1960).) Separate areas, of course, cannot meet the requirements of compactness. (See, *e.g., City of Indianapolis v. Pollard*, 241 Ind. 66, 169 N.E.2d 405, 408 (1960); *Town of Elberfeld v. Annexation of Certain Territory*, 260 Ind. 499, 296 N.E.2d 653, 654 (1973).) Some annexation statutes expressly provide for simultaneous addition of separate parcels, leading to the conclusion in other types of annexation where such provisions are omitted that it was intended not to permit simultaneous annexation of separate parcels. See, *e.g., People ex rel. Paganini v. Town of Corte Madera*, 97 Cal. App. 2d 726, 218 P.2d 810, 813 (1950); *cf. Western National Bank v. Village of Kildeer*, 19 Ill. 2d 342, 350-52 (1960).

In cases cited by petitioners the statutes provide that the election be held only in the annexing municipality and not in the territory to be annexed. See, *e.g., Garner v. Benson*, 224 Ark. 215, 272 S.W.2d 442, 445 (1954). See also *Marsh v. City of ElDorado*, 217 Ark. 838, 233 S.W. 2d 536, 538 (1950); *City of St. Peters v. Kodner Development Corp.*, 509 S.W.2d 788, 789 (Mo. App. 1974).[1]

The case before us involves the particular provisions of "An Act in relation to fire protection districts." When a fire protection district is organized, there is no provision for exclusion or objection by an owner around the perimeter. (Compare *Krupp v. Taylor*, 20 Ill. App. 2d 282 (1959).) The only part of the Act which appears to contemplate disconnection of property included within a fire protection district without connection or absorption into another fire protection district requires that the property owner allege that the disconnection will not cause the territory remaining in the district to become noncontiguous. (See Ill. Rev. Stat. 1973, ch 127½, par. 35.) Therefore, in contrast to the Municipal Code, "An Act in relation to fire protection districts" seems more concerned with the contiguity of the district than of the territory to be annexed. Other provisions regarding disconnection either upon the

---

[1] Several other jurisdictions have also permitted the annexation of separate parcels in one proceeding. (See, *e.g., Norfolk County v. City of Portsmouth*, 186 Va. 1032, 45 S.E.2d 136, 144 (1947); *Adams-Millis Corp. v. Town of Kernersville*, 6 N.C. App. 78, 169 S.E.2d 496, 504 (1969); *State v. City of Columbia*, 210 Tenn. 657, 362 S.W.2d 219, 220-21 (1962); *City of Ames v. Olson*, 253 Iowa 983, 114 N.W.2d 904 (1962); *Dupre v. Mayor & Board of Aldermen*, 126 So. 2d 637, 640 (La. App. 1961); *Frenship Rural H. S. Dist. v. Central Education Agency*, 404 S.W.2d 41, 44 (Tex. Civ. App. 1966).) In our view, however, the cited cases are not persuasive because of the dissimilarity between the facts or the statutory provisions involved and the factual context and applicable statutes in the case before us.

initiative of the property owners or voters or by operation of law all contemplate that the property in question will remain within some fire protection district. (See, *e.g.*, Ill. Rev. Stat. 1973, ch. 127½, pars. 37, 37a, 37c, 38.1, 38.2, 38.3 and 38.4.) There therefore emerges an apparent legislative intent that every property owner's need for fire protection should be met by some district or municipality able to furnish it.

It would also seem practical that a fire protection district, once formed, should be able to add the various "islands" of land not presently within the district in order to be in a position to most efficiently furnish the services needed. It should not be necessary for firemen in station houses or fire trucks to consult maps to determine in a maze of streets whether a burning house is within or without the district boundaries. Regularity of district boundaries would promote the purposes of the statute. The preamble to the statute is persuasive in this regard:

> "It is hereby declared as a matter of legislative determination that in order to promote and protect the health, safety, welfare and convenience of the public, it is necessary in the public interest to provide for the creation of municipal corporations known as fire protection districts and to confer upon and vest in the fire protection districts all powers necessary or appropriate in order that they may * * * provide as nearly adequate protection from fire for lives and property within the districts as possible * * *." (Ill. Rev. Stat. 1973, ch. 127½, par. 21.)

In addition, in view of the fact that the legislature provided in section 1 of the act for the creation of a fire protection district including both incorporated and unincorporated areas, it would appear to have been within the reasonable contemplation of the legislature that such a district would have occasion to annex territory made up of both incorporated and unincorporated areas, as here. Although the circuit court could, consistent with the provisions of section 1, establish the separate voting precincts for the convenience of the voters as was done here, we view the legislature's failure to include in section 3 on annexation a provision requiring majority assent in both incorporated and unincorporated areas as an indication of the propriety of including incorporated and unincorporated parcels in a single petition.

A requirement that separate annexation petitions must be filed describing each "island" or "pocket" contiguous to the district or that separate annexation proceedings be instituted for incorporated and unincorporated areas would create the possibility of a multiplicity of separate suits which should be avoided in the absence of specific language by the legislature compelling such a result. We find no such specific language in "An Act in relation to fire protection districts."

Further, a construction that would require that territory to be annexed to a fire protection district be both contiguous to the district and to each parcel in the territory would, in fact, make it impossible in this case to comply with the requirement of section 1 of "An Act in relation to fire protection districts" that the petition include all of the city, village or incorporated town situated outside of the existing fire protection district. All of the tracts in precinct 1 have been previously annexed to the Village of Carol Stream. They adjoin the fire protection district but several are separate from each other. In this configuration the separated tracts would not have the qualifications set forth in section 1 if they could not be annexed to the fire protection district which serves Carol Stream in a combined petition.

Property owners who believe their property will not be adequately served by the particular district to which annexation is sought, of course, are still permitted to object if the area sought to be annexed does not have the qualifications set forth in section 1 of "An Act in relation to fire protection districts." Section 1 includes the qualifications that a territory must be "(3) so situated that the acquisition, establishment, maintenance and operation of a fire station or stations, facilites, vehicles, apparatus and equipment for the prevention and control of fire therein will conduce to the promotion and protection of the health, safety, welfare and convenience of the public * * *." In the event a petition includes a collection of separated parcels whose inclusion as a whole in a "territory" will not advance the public welfare, it is not to be concluded from this opinion that the court may not reject the proposed "territory." If the petition takes in more territory than the district is able to adequately serve; or if the configuration of the territory creates problems of convenient access; or if the combination of isolated parcels to make up a "territory" is obviously designed to create an unjust or unwholesome effect, the court could properly reject the proposal. Section 1 also includes the qualification that the territory must be "(2) so situated that the destruction by fire of the buildings and other property therein is hazardous to the lives and property of the public * * *." Thus the sparsely built up areas included in a petition with more populous areas might also be excluded for failure to meet qualification (2). However, the parcels sought to be annexed in this case do not appear to represent a pattern of inclusion or exclusion designed to circumvent the public interest and policy qualifications of section 1.

In view of the purpose of fire protection districts and the concern for the public interest and safety reflected in the act, an emphasis on each property owner's right of self-determination or local control in a given area on the question of becoming part of an existing fire protection

district seems less a factor than it might be under the municipal annexation statutes. The objector's concern that voters on one side of an area should not be deprived of the opportunity to determine which district they will join without being out voted by voters in another part of the area also seems of lesser importance in view of the several statutory provisions for transferring property from one fire protection district to another. While the filing of a petition which includes one or more separate and distinct tracts of land could result in certain electors being outvoted by other electors, the same results could obtain were the parcels connected. We believe that voters and property owners are sufficiently protected by the requirement in section 3 that the territory to be annexed have the qualifications set forth in section 1.

Further, we believe that the objector's argument that each parcel should have the opportunity to have its votes counted separately on the question of annexation is substantially· undermined by the striking difference between the provisions concerning the majority necessary for a successful election in sections 1 and 3. Had the legislature intended that territory be annexed or remain unannexed according to the vote in each precinct, it probably would have so provided.

■■ Under the statute before us we conclude that territory may be annexed to an existing fire protection district to which it is contiguous without a showing that each parcel of property adjoins the other.

■■ The petitioners have also argued that the objector is barred because of his failure to object before the entry of the March 26, 1975, order adjudicating the validity of the petition and ordering an election or because the objector failed to take an appeal or move to vacate the March 26 order within 30 days of its entry. We have decided the case on its merits because we do not agree that the objector has waived his objections.

■■ Jurisdictional defects may be raised at any time in the purely statutory proceedings such as the organization of a fire protection district. (See *People ex rel. Curtin v. Heizer*, 36 Ill. 2d 438, 441 (1967).) Similarly, contiguity is jurisdictional in an annexation proceeding. See *People v. City of Rockford*, 120 Ill. App. 2d 275, 279-82 (1970); *In re Annexation to City of Springfield*, 85 Ill. App. 2d 191, 194 (1967).[2]

Moreover, the order calling the election is not made final and appealable under section 1 of "An Act in relation to fire protection districts" (Ill. Rev. Stat. 1973, ch. 127½, par. 21). See also *In re*

---

[2] The rule is also recognized in *Winfield Fire Protection District v. City of Wheaton*, 29 Ill. App. 3d 630, 634 (1975), a case in which this court decided that contiguity is not jurisdictional in proceedings for disconnection by operation of law. See Ill. Rev. Stat. 1973, ch. 127½, par. 38.3.

*Organization of Fox Valley Community Airport Authority*, 23 Ill. App. 3d 168, 170-71 (1974).

The judgment that the parcels located in precinct 2 were not duly annexed to the Carol Stream Fire Protection District is reversed. The cause is remanded with directions to enter an order consistent with this opinion and to proceed further in accordance with the applicable statute.

Reversed and remanded.

RECHENMACHER, P. J., and GUILD, J., concur.