CLARK v. HOLT.

4-9423                                237 S. W. 2d 483

Opinion delivered March 12, 1951.

*Woody Murray, James M. McHaney* and *Owens, Ehrman & McHaney,* for appellant.

*Ben C. Henley* and *J. Smith Henley,* for appellee.

MINOR W. MILLWEE, Justice.   This appeal challenges the validity of proceedings to annex certain territory to the town of Lead Hill, Arkansas, under the provisions of Ark. Stats., §§ 19-301, 302.   Appellants are residents and property owners of Lead Hill.   On March 24, 1950, they brought this action in the circuit court pursuant to Ark. Stats., § 19-303 to set aside an order of the Boone County Court entered on March 3, 1950, annexing a 183-acre tract to the town of Lead Hill and to restrain appellees, petitioners for said annexation, from further action under said order.   Appellants attacked the validity of the annexation proceedings on several grounds and appellees answered with a general denial.

Upon trial of the issues, the circuit court entered a judgment holding the annexation proceedings valid.

The first contention for reversal is that the order of annexation is void because the territory sought to be annexed is not contiguous to the town of Lead Hill as required by § 19-301, *supra.*   Since we have concluded that this contention must be sustained, we find it unnecessary to discuss the other three grounds of invalidity urged against the proceedings.

Lead Hill is an incorporated town with a population of 150 to 200 persons and so located that it will be on the shore of the reservoir created by the construction of Bull Shoals Dam by the federal government. When the dam is completed, the reservoir, when flooded, will inundate approximately half the territory of Lead Hill thus necessitating the relocation of many of the residences and business establishments of the town. The federal government compensates owners for the lands and improvements flooded. It is also the policy of the government to reimburse the town for the construction of equivalent streets, alleys and drainage facilities in the relocation area.

In compliance with a government requirement, 37 property owners of the town, including the principal appellee, J. R. Holt, presented a petition to the government in August, 1948, favoring a relocation adjacent to and northwest of the original town. Government engineers surveyed and platted 95 acres in the area favored, 50 acres of which were laid out in lots and blocks, at a cost of $2,400. In February, 1949, the 95-acre tract was annexed to Lead Hill and in March, 1949, the government entered into a contract agreeing to compensate the town in an amount not to exceed $13,500 for the construction of streets, alleys and other facilities in the northwest site. At the time of the instant hearing, this work had not been started because final government approval had not been given, but the work was expected to be completed in August, 1950.

Although appellees sought to attack the validity of the annexation of the northwest area in the instant suit, the trial court sustained appellants' objections to the testimony offered for that purpose and the validity of that proceeding is not involved here.

The 183-acre tract sought to be annexed in this suit is located south of Lead Hill. Appellee J. R. Holt and three or four others acquired the tract sometime after annexation of the northwest area. At the time of the trial, appellees, at their own expense, had platted a considerable portion of the tract, lots had been sold to pur-

chasers in Arkansas and several other states and considerable construction work had been done in the opening and graveling of streets. The main body of the 183-acre tract is located about one-half mile south of the south boundary of the original town of Lead Hill. The only connection of the main body of the area sought to be annexed with Lead Hill is by a strip of land 50 feet wide and 3060 feet long. This strip has not been dedicated for public use, is not platted into lots and blocks and its dimensions and location would seem to render such platting impracticable. The strip traverses rough, hilly land. Although a road might be built over it, the cost would be excessive. In going from Lead Hill to the area in controversy it is necessary to travel over a county road located outside the corporate limits and running parallel with the 50-foot strip.

Under § 19-301, *supra,* if the territory sought to be annexed is not "contiguous and adjoining" the municipality, the proceedings are without legal effect. Able counsel for appellees assert that the requirement of contiguity must be considered in the light of the purpose for which annexation is sought and the peculiar circumstances existing in each case. We appreciate the fact that the relocation of a large part of a town presents a problem not ordinarily involved in annexation proceedings and a situation apparently different from that contemplated by the framers of our statutes. Having adopted the statutory procedure of annexation, however, it was incumbent on appellees to comply with the requirement as to contiguity.

This court has not passed on the exact question presented. In the famous case of *Vestal* v. *Little Rock,* 54 Ark. 321, 15 S. W. 891, 16 S. W. 291, 11 L. R. A. 778, the court said: "By contiguous lands we understand such as are not separated from the corporation by outside land; and we think the statute permits the annexation of any such lands, and that the court is justified in making an order to annex them, whenever they are so situated with reference to the corporation that it may reasonably be expected that after annexation they will unite with

the annexing corporation in making up a homogeneous city, which will afford to its several parts the ordinary benefits of local government. But however near they may be to the petitioning corporation, if they are so circumstanced with reference to it that it could not reasonably be expected that the parts would amalgamate and organize a municipal unit which would afford to each the ordinary benefits of local government, it would not be reasonable and proper to order their annexation. When actual unity is impracticable, legal unity should not be attempted, but the incongruous communities should be left to independent control. In all cases, however, where actual unity is practicable, legal unity should be ordered as promising the greatest aggregate of municipal benefits.''

In 37 Am. Jur., Municipal Corporations, § 27, it is said: ''The legal as well as the popular idea of a municipal corporation in this country, both by name and use, is that of oneness, community, locality, vicinity; a collective body, not several bodies; a collective body of inhabitants—that is, a body of people collected or gathered together in one mass, not separated into distinct masses, and having a community of interest because residents of the same place, not different places. So, as to territorial extent, the idea of a city is one of unity, not of plurality; of compactness or contiguity, not separation or segregation.'' See, also, 62 C. J. S., Municipal Corporations, § 9 b.

Appellees contend that under the language of the Vestal case the statute only requires mechanical contiguity. Courts of other states have disapproved similar attempts to annex outlying territory by the device of a narrow, shoestring strip such as that employed in the instant case. The case of *Wild* v. *People,* 227 Ill. 556, 81 N. E. 707, involved the validity of the incorporation of a village under a statute requiring that the territory included therein be contiguous. In condemning the inclusion of outlying lands by use of a half mile strip connecting with the main corporate body, the court said: ''It is apparent that the 50-foot strip is merely included

for the purpose of connecting the piece of ground at the west end thereof with other territory in the village. It is also apparent that the piece of ground at the west end of the strip is not in fact contiguous to grounds in the village other than that strip. The use of that strip to connect the tract at its western extremity with other territory in the village is a mere subterfuge, and not a compliance with the law. It is useless to discuss the plea farther." See, also, *People* v. *City of Lemoore,* 37 Cal. App. 79, 174 Pac. 93; *City of Wichita Falls* v. *Bowen,* (Tex. Civ. App.) 175 S. W. 2d 732.

Several of our cases involve efforts of the village of Omaha to establish a border town status in order to take advantage of a lower gasoline tax rate. The village, which is situated four miles south of the Arkansas-Missouri line, was incorporated so as to include lands four miles long and one-fourth mile wide extending from the village along a U. S. highway to the state line. While the incorporation was held void because the four-mile strip consisted of agricultural and timbered lands not needed for legitimate expansion of the town, it was also condemned as a transparent subterfuge to obtain the lower tax rate of Missouri. In the last of these cases, *Park* v. *Hardin, Commissioner of Revenues,* 203 Ark. 1135, 160 S. W. 2d 501, we said that the end sought by such efforts could not be realized "by reaching out, lasso-like, to harness space."

It is undisputed that the nearest point of the town of Lead Hill to the proposed south addition is 3060 feet except for the intervening 50-foot strip. The evidence is insufficient to show an intent, immediate or prospective, to utilize the strip in the development of the addition. The only apparent purpose of the strip is to provide a connecting link with the lands actually sought to be annexed. For all practical purposes, a half mile gap will divide the old town from the proposed addition and the essential of contiguity is lacking. The judgment is accordingly reversed and the cause remanded with directions to set aside the order of annexation.