VAN SANT KALB ET AL *v.* CITY OF
WEST HELENA, ARKANSAS

5-5455                                    463 S. W. 2d 368

Opinion delivered February 22, 1971

*W. H. Daggett* and *W. G. Dinning, Jr.,* for appellants.

*Garland Q. Ridenour,* for appellee.

JOHN A. FOGLEMAN, Justice. Certain property owners who objected to annexation of their property to the

City of West Helena have appealed from a judgment of the circuit court annexing the territory.

Mildred Scott asserts that the court erred in holding that her land was suitable to, or of such character as to be subject to, annexation. She contends that it was vacant and did not derive special value from its adaptability for city uses. Van Sant Kalb and others assert that their property was not suitable for city use because it was used for agricultural and horticultural purposes and because it was not contiguous to the city.

The last point may be disposed of quickly. It is based upon the fact that annexation of the area, in which the lands of Kalb and appellants similarly situated are located, would leave two areas outside the city limits but entirely surrounded by property within the city limits. As they point out, our statutes require that annexed territory be contiguous to the municipality. Ark. Stat. Ann. § 19-307 (Supp. 1969). Obviously, there are good reasons why an area which does not touch the limits of a city should not be annexed to it. Still, contiguity does not require that every point of some boundary of annexed territory be common to it and a municipal boundary. We have resorted to a definition of the word contiguous, when descriptive of two tracts of land, to mean "in close proximity, touching * * * in actual close contact * * * as, contiguous proprietors are those whose lands actually touch." *Seligson* v. *Seegar*, 211 Ark. 871, 202 S. W. 2d 970. We have held that two tracts which corner are contiguous, because they touch. *Clements* v. *Crawford County Bank*, 64 Ark. 7, 40 S. W. 132, 62 Am. St. Rep. 149. In considering the question of contiguity in an annexation case, this court said long ago that we understand contiguous lands to be those not *separated* from the municipal corporation by outside lands. *Vestal* v. *Little Rock*, 54 Ark. 321, 15 S. W. 891, 16 S. W. 291, 11 L. R. A.

These appellants' lands lie in a tract designated in the record alternately as 5A or A5. It is a sort of L-shaped tract with the vertical line at more than a right angle to the base or horizontal portion. Immedi-

ately above the base of the L, the vertical portion is rendered irregular in shape by protrusions of tracts now in the city limits as shown by maps introduced in evidence. The south line of the base tract runs east and west and coincides with the city limits for its entire length. Almost the entire length of the north line also runs along the city limits. The upper or vertical portion, about three-quarters of a mile long, is virtually bisected by Highway 242, also called Fourth Street road. It extends generally 450 feet east of Highway 242 and 300 feet west of the highway. Irregular westward protrusions from the tract border the city limits, one on three sides and another for a distance of some 150 or 200 feet on one side. The fact that there would be "islands" of unannexed territory entirely surrounded by the municipal corporation does not destroy the contiguity of the territory annexed. In order for us to say that the territory proposed for annexation was separated from the municipal corporation, it would have to be completely disconnected or detached therefrom by reason of the intervening territory.

*Clark* v. *Holt,* 218 Ark. 504, 237 S. W. 2d 483, is not contra. There, Lead Hill sought to annex a 183-acre tract one-half mile from the corporate limits connected only by a strip 50 feet wide and 3,060 feet long not dedicated for public use and traversing terrain rendering its utilization for platting into lots and blocks or for road construction highly impractical, to say the least. We found no evidence of any intent, immediate or prospective, to utilize the strip for development. The only purpose of inclusion of this strip was as a connecting link with the lands actually sought to be annexed. Under these circumstances we could not consider the 183-acre tract contiguous to the town. Obviously, the connecting strip met none of the tests prescribed in *Vestal* v. *Little Rock,* 54 Ark. 321, 15 S. W. 891, 16 S. W. 291, 11 L. R. A. 778. Thus, we said the 183-acre tract was separated from the town by a half-mile gap.

The contention of appellant Mildred Scott can be disposed of almost as readily. First, we should say

that her contention and the remaining contention of Kalb can only be sustained if we find substantial evidentiary support lacking. *Brown* v. *Peach Orchard,* 162 Ark. 175, 257 S. W. 732; *Planque* v. *City of Eureka Springs,* 243 Ark. 361, 419 S. W. 2d 788. Furthermore, the favorable results of an election on the question of annexation bound the court to grant the petition unless cause for denying it was shown, so the burden lay upon protestants (appellants) to show why the territory should not be annexed. *Planque* v. *City of Eureka Springs,* supra.

The gist of appellant Scott's argument is that her property is vacant and unimproved and is not adaptable for city uses because of its topography. There seems to be no argument about the property's being vacant and unimproved (except for 6 houses), and the lack of plans for development by the owner. Likewise, all parties seem to concede that the terrain is rather rugged because of one knoll and two valleys. It was shown that this heavily wooded tract of approximately 50 acres lies between a junior high school established in 1928 on the west and a junior and senior high school later constructed on the east. Four families live in houses on the property and three families and one widow in trailers parked on the western edge of the tract. The property is served by the Arkansas Power & Light Company and by a water line paid for by appellant Scott's mother but served by the city water system of West Helena. Four homes in Richmond Hill Subdivision adjoin the tract on the west. West Helena's Garland Street comes up to the property line. A bowling alley and a church lie immediately south of the property. The Arkansas Power & Light Company building, a Taystee Freeze, a dwelling house and a Liberty Cash grocery lay in proximity to the Scott land.

The manager of appellee's water and sewer departments testified that the property could be provided with city sewer through the property without any problem. City water lines are near it on two sides. He stated that there was no reason why the tract could not be susceptible to residential development. While

this witness said that he had never been on the interior of the tract, he had been along the outskirts and showed general familiarity with it. He had sought an easement from Mrs. Scott for a sewer line to serve another potential development.

Tommy Dial, a real estate broker, testified that the Scott tract was valuable because of its proximity to a church, Highway 49, the schools, Springdale Road (a rapidly developing area), and a junior college. It was his opinion that the considerable expense required to develop the property would be justified because of its favorable location. Mrs. Scott conceded that the property could be developed if enough money was expended on it. Her objection to annexation was based upon her desire to preserve the property for a home for her and her 7 siblings, if they ever needed it for that purpose, in keeping with the wishes of her mother from whom she inherited the property.

We cannot say that this evidence does not tend to show that the Scott land is adaptable for city uses or constitute substantial evidentiary support for the judgment.

Only 5 of the protestants whose property lay in tract 5A testified. Appellant Kalb lives along Highway 242 about one-half mile north of the existing city limits. He and his father owned 17 acres, on which Kalb grazed 10 cows and 60 head of hogs. The hog business was commenced by Kalb after the petition for annexation was filed. Their lands were the site of 2 houses, in one of which both resided and in the other renters were occupants. The property has a 600-foot frontage on Highway 242. Only 5 acres would be included in the annexed territory. There is a wooded parcel of 34 acres in tract 5A north of the Kalb property without any houses. Kalb exhibited a map showing that the upper arm of the L was spotted with areas devoted to pasture, to cropping in beans, cotton and corn, a pecan orchard and woodlands. He estimated that 30 acres were in pasture, 30 in crops and 30 in livestock. A water line was originally extended through the area to

the Kalb property by a private utility in 1945. Kalb's house is presently on a four inch line. A sewer line had been extended north along Highway 242 to the Porter property noth of Kalb's land, and the city had offered to let residents along the line avail themselves of it. Kalb testified that a number of the residents of the area moved there to avoid municipal regulation and obligations. He admitted that there had been a considerable increase in West Helena's population since 1945 and that residential development in the area of his lands was progressing.

Joe Schmitz owned 20 acres abutting Highway 242. His property would be annexed to a depth of 300 to 350 feet, leaving about two-thirds of the tract devoted to crops surrounded by property within the corporate limits. He had planned to raise cattle on the property in the future. His property was furnished city water and lights. He and his daughter occupied a house on the tract, and his son lived in a trailer thereon. He objected to being prevented by city ordinances from discharging firearms to eliminate predators from his pecan trees.

Charlie Wheeler lived on a lot 80' x 100' which he bought in order to get outside the city limits. He considered Fourth Street road property to be substantially residential.

Carl Stevens was born and raised on a tract of 2½ acres which he described as located 4 or 5 blocks north of the Schmitz land, but he was living in a house built in 1965. He paid for sewer service at a higher rate than West Helena residents paid. He kept two head of cattle for beef for home consumption and a horse for riding purposes on his property.

Elizabeth Mahan owned 28.9 acres on which she was born and still lived. It fronted on the highway. Hogs, cows and horses were kept on the premises but not for commercial purposes. She raised farm products. Her father had obtained water service from a private concern 45 years earlier. She had access to the city sewer line.

Mayor Porter, who had owned approximately 15 acres at the northern extremity of tract 5A for 10 or 12 years, testified that since 1960 West Helena had experienced a growth in population from between 5,000 and 6,000 to nearly 9,000. He stated that most of the growth had been to the west and north of the city. The city had utilized a planning commission and a council of engineers, the Harlan Bartholomew Agency, Mr. Bonner of the University of Arkansas and a citizens' advisory committee to project and aid in orderly growth. The proposed annexation was in keeping with their advice. The mayor stated that people were building in the area whenever they could find tracts for development. No police or fire protection was afforded this area. The manager of the water and sewer department testified that there were 131 customers in the area and estimated this to be approximately the number of families living in the area and that sewer service was available to nearly all of them.

Tommy Dial said that there had been considerable development out Fourth Street and found 95 to 100 families in the area. He valued one home at $75,000 to $80,000. He opined that all of tract 5A was subject to residential development. He found a small amount of the land used for grazing cattle on the east side of Fourth Street and cotton and bean fields on a few vacant places along the west side.

There was testimony that: there are residential locations in the area all along Highway 242; approximately 75 houses and 3 trailer courts, upon which there is a total of 15 to 20 trailers, 2 grocery stores, a small drive-in restaurant, a radio repair shop, a generator shop, a·radiator shop, a church, a greenhouse, a nursery, a tract used intermittently for used car sales and 2 subdivisions are located in tract 5A.

There is substantial evidence that significant portions of tract 5A were used for agricultural and horticultural purposes. There is also substantial evidence to show that the tract represents the city's growth beyond the city limits and that the value of the lands is derived

from actual and prospective use for city purposes rather than enhanced by proximity to the city. If this evidence is accepted, the tract is a proper subject of annexation. *Vogel* v. *City of Little Rock,* 55 Ark. 609, 19 S. W. 13. *City of Newport* v. *Owens,* 213 Ark. 513, 211 S. W. 2d 438, relied upon by appellants does not indicate a different result. There we affirmed a judgment denying annexation because we found substantial evidence to support it, but took care to point out that there was also substantial evidence to support a holding based upon the *Vogel* rule. We might well have sustained a result here opposite to the circuit court's judgment, had that court come to such a conclusion.

The judgment is affirmed.

HARRIS, C. J., and BYRD, J., dissent.

CARLETON HARRIS, Chief Justice, dissenting. I cannot agree with the majority in affirming this case for the reason that there are eighty or ninety acres of land encompassed by the city limits which are specifically omitted from the order of annexation. The result is that we have two "islands" within city territory, but not a part of the city. This means that these particular areas will not be furnished fire or police protection and persons needing police protection will have to call the county sheriff's office.

I have been unable to determine from the record why these two tracts were omitted. Mr. E. L. Cowsert, manager of the Water and Sewer Department of the City of West Helena testified that it appeared that these lands were fit for development and he did not know the reason that they were left out. Mr. Tommy Dial, a licensed real estate broker, who testified on behalf of the city, stated very definitely on cross-examination that he could not see any difference in this land and the land included, and he knew of no reason why the two islands were not embraced in the annexation. In fact, he said, "I asked this question myself; its highest and best use, in my opinion, would also be for residential development."

In *Clark* v. *Holt,* 218 Ark. 504, 237 S. W. 2d 483, this court approved, and quoted language, found in 37 Am. Jur., Municpal Corporations, § 27, as follows:

"The legal as well as the popular idea of a municipal corporation in this country, both by name and use, is that of oneness, community, locality, vicinity; a collective body, not several bodies; a collective body of inhabitants—that is, a body of people collected or gathered together in one mass, not separated into distinct masses, and having a community of interest because residents of the same place, not different places. So, as to territorial extent, the idea of a city is one of unity, not of plurality; of compactness or contiguity, not separation or segregation."

Certainly, the inclusion of the two islands would have contributed to "oneness" since these tracts are in the same "locality, vicinity", and through an orderly extension of the city limits, should be "a body of people collected or gathered together in one mass, not separated into distinct masses, and having a community of interest because residents of the same place, not different places [actually three different places]."

I respectfully dissent.

I am authorized to state that Byrd, J., joins in this dissent.