## JIM PARRISH ET AL v. CITY OF RUSSELLVILLE

5-6164 490 S.W. 2d 126

### Opinion delivered February 12, 1973

*U. A. Gentry* and *W. H. Schulze,* for appellants.

*John Harris,* for appellee.

CONLEY BYRD, Justice. For reversal of an order annexing 6,398 acres to the City of Russellville, appellants Jim Parrish, et al, chicken farmers, hog farmers and fish farmers, contend among other things that the published description required by Ark. Stat. Ann. § 19-101 (Repl. 1968), is insufficient and that their lands are not adaptable nor presently needed for town purposes.

The record shows a description in two parts. The first part commences at the SE-Corner of Sec. 9, T 7 N, R 20 W and then describes a line that terminates at the point in SW¼ NW¼ Sec. 31, T 8 N, R 20 W where the Missouri Pacific Railroad right of way line intersects the present city limits. The second description commences at the SW-Corner of N½ SE¼ Sec. 32, T 8 N, R 20 W, and with some admitted errors, terminates at the point where the first description commences.

To support its position that the description is sufficient, the City of Russellville relies upon the cases of

*Tex State* v. *Fort Worth,* 339 S.W. 2d 707 (Tex. 1960) and *Dixon* v. *Bremerton,* 25 Wash. 2d 508, 171 P. 2d 243 (1946). Those cases recognize that a description must be sufficient to render possible the ascertainment of the boundaries involved and the territory intended to be included. The description approved in the Texas case commenced at a point on the present city boundary and described the periphery of the area to be annexed by circling back to the point of beginning. The description approved in the Washington case described all that portion of two particular geographical sections lying South and East of the existing city limits. Here the description does not encircle any geographical area nor describe a geographical area to be annexed. In fact the descriptions here only describe a line. This of course does not comport with the requirements of Ark. Stat. Ann. § 19-101 (Repl. 1968), that the petition describe "the territory to be embraced." Consequently, the petition for annexation should have been dismissed.

On the issue that the lands sought to be annexed are not presently adaptable to town purposes, the proof shows that of the 6,398 acres, sought to be annexed, 3,939 were farm land, 1,674 were wooded land, and 785 acres were auto salvage yards, coal mines, cemeteries and residences.

Mr. Bill Onopa, employed by the West Central Arkansas Planning and Development District testified that based upon population estimates, that the City of Russellville would grow from a 1971 population of 11,250 to a 1990 population of 25,000, the City of Russellville needed to annex the 6,250 acres for planning purposes. On cross-examination Mr. Onopa fixed a reasonable planning period at any where from twenty to twenty-five years. In response to the question as to whether the 6,250 acres were adaptable for City use today, Mr. Onopa Stated:

> "Actually, it's not that simple. If you consider the total area that can be serviced with municipal services today, then it is not. But if you consider the total area that needs municipal services within a reasonable planning period, then the answer is yes."

On re-direct he stated that the 6,250 acres would probably be consumed within the next 25 to 30 years.

Robert Darr, a real estate broker, in speaking of the adaptibility of the Parrish property for town purposes stated:

"Again, the Parrish property is at present an operating agricultural unit. It has a very nice view of Lake Dardanelle, which would tend to enhance its value from a residential and/or a commercial aspect, being on the lake and across the highway immediately east of the Dardanelle State Park. There would be a possibility of commercial development to complement the existing facilities in the State Park, as well as residential development which would provide lots that have a view of the lake, and this is seemingly a pretty big thing in the real estate right now."

Other proof demonstrated that portions of the lands sought to be incorporated not only were not served by city streets, but that they were as much as six miles from the nearest fire station.

The law with respect to annexation of lands not presently needed for city purposes was stated in *Vestal* v. *Little Rock,* 54 Ark. 321, 16 S.W. 291 (1891) in this language:

"The last fact urged is the inclusion of forty acres of land belonging to Joseph W. Vestal. It lies across the river from the corporation, and is from a half a mile to three quarters of a mile distant from the unincorporated town, No streets of the corporation or village, or other town improvements, extend to it, and the line of city settlement has not reached it; it is not laid off for city uses, there is no settlement on it, and its proprietor cultivates it in his business as a florist and farmer. He remonstrated against its annexation upon the hearing in the county court, and by successive appeals renews his remonstrance here. He insists that his land is not needed nor at present adaptable for city uses, that it would not be enhanced in value by annexation, but that

its annexation would subject it to taxation without any benefit or compensation to him; and the facts sustain his contention. Upon a similar state of case it has been held by some courts that land could not be subjected to municipal taxation; and never, so far as our information goes, that it ought to be. In this State all city property must bear alike the burden of ordinary city taxation; *Fletcher* v. *Oliver,* 25 Ark. 289; *Cary* v. *Pekin,* 88 Ill. 154; *Martin* v. *Dix,* 52 Miss. 53; *Washburn* v. *Oshkosh,* Wis. 453; and, in determining whether the annexation of particular lands is reasonable and proper, regard should be taken of this fact. Was it desirable and proper to include Vestal's land, and subject it to ordinary taxation for city purposes? He had no need of local government, and the city had no need of his land. It could not afford him, even in a moderate degree, the ordinary benefits of city government, without an expense which it could not have contemplated without cause for remonstrance on the part of its residents.''

Furthermore, as recently as *Town of Ouita* v. *Heidgen,* 247 Ark. 943, 448 S.W. 2d 631 (1970), (involving some of these same lands), we pointed out that where it is manifested that the owners of land taken into a city can derive no benefits from being placed within the incorporated limits, such action amounts to the taking of private property for public use in the form of taxation without giving any compensation.

Consequently upon the record, we can find no substantial evidence to support the trial court's finding that all the lands in the proposed annexation area are needed for town purposes and are valuable by reason of their adaptability for prospective town purposes.

Reversed and dismissed.

FOGLEMAN AND JONES, JJ., concur.

JOHN A. FOGLEMAN, Justice, concurring. I agree with the result and all of the opinion except that part relating to the land description. I feel that the particular

description here involved was sufficient to comply with statutory requirements.

I am authorized to state that Mr. Justice Jones joins in this opinion.