Roy L. HOLMES *v.* CITY OF LITTLE ROCK, et al.

84-266                                              686 S.W.2d 425

Supreme Court of Arkansas
Opinion delivered March 25, 1985
[Rehearing denied April 29, 1985.*]

*Purtle, J., would grant rehearing.

298

*Givens & Buzbee,* for appellant.

*Carolyn B. Witherspoon,* Acting City Att'y, by: *Victra L. Fewell,* Asst. City Att'y, for appellee.

ROBERT H. DUDLEY, Justice. The Board of Directors of the City of Little Rock adopted an ordinance which pro-

posed the annexation of fifteen separate tracts of land, designated "A" through "O." An election was held, and the vote was in favor of the annexation, both in the City and in the previously unincorporated area. Appellant, who owns land in tract H, and others challenged the annexation in circuit court. All of the challenges, excepting appellant's, were dismissed. Appellant contends that tracts A, B, C, G, K, and O were annexed in violation of Ark. Stat. Ann. § 19-307.1 (Repl. 1980). The trial court upheld the annexation. We affirm. Jurisdiction to construe the annexation statute is in this Court. Rule 29(1)(c).

The rules controlling appellate review of annexation cases in Arkansas are well settled. A majority of electors voting in favor of annexation make a *prima facie* case for annexation, and the burden rests on those objecting to produce sufficient evidence to defeat the *prima face* case. *City of Crossett* v. *Anthony,* 250 Ark. 660, 466 S.W.2d 481 (1971); *Faucett* v. *City of Atkins,* 248 Ark. 633, 453 S.W.2d 64 (1970); *Mann* v. *City of Hot Springs,* 234 Ark. 9, 350 S.W.2d 317 (1961). By the very nature of this type of litigation, there is a wide latitude for divergence of opinion and consequently, a high degree of reliance must be placed upon the findings of the trial judge. *Faucett* v. *City of Atkins,* 248 Ark. 633, 634, 453 S.W.2d 64, 66 (1970). This court's task is not to decide where the preponderance of the evidence lies, but solely and simply to ascertain whether the trial court's findings of fact are clearly erroneous. ARCP Rule 52.

Ark. Stat. Ann. § 19-307.1 in its pertinent part provides:

Any municipality may . . . adopt an ordinance to annex lands contiguous to said municipality, provided the lands are either (1) platted and held for sale or use as municipal lots; (2) whether platted or not, if the lands are held to be sold as suburban property; (3) when the lands furnish the abode for a densely settled community, or represent the actual growth of the municipality beyond its legal boundary; (4) when the lands are needed for any proper municipal purposes such as for the extension of needed police regulation; or (5) when they are valuable by reason of their adaptability for prospective municipal uses.

Provided, however, that contiguous lands shall not be annexed when they either: (1) have a fair market value at the time of the adoption of the ordinance of lands used only for agriculture [agricultural] or horticulture [horticultural] purposes and the highest and best use of said lands is for agricultural or horticulture [horticultural] purposes; . . . .

The statute is disjunctive, and the annexation of the land is proper when the proof sufficiently complies with any one of the conditions. *Faucett* v. *City of Atkins*, 248 Ark. 633, 636, 453 S.W.2d 64, 67 (1970); *Louallen* v. *Miller*, 229 Ark. 679, 317 S.W.2d 710 (1958).

Since the sufficiency of the evidence is questioned, it is necessary that we review the evidence.

The area in the fifteen tracts comprises 12.6 square miles and has approximately 11,000 residents. For the past six years the City has used a voluntary annexation procedure which has left a very irregular boundary. One of the primary goals of this annexation is to square as many boundaries as possible in order to alleviate the irregular boundary impediment to furnishing urban services. There was testimony to prove that the City could afford to extend city services to each of the areas annexed.

Nine years ago the City employed a consulting firm to recommend ways to prevent rapid sub-standard growth in adjacent unincorporated areas. Subsequently, the City adopted a series of policies to provide for the deliberate and orderly expansion of the city boundaries. The goal of the policies is to prevent poor quality development which would have to be remedied when the tracts were later annexed.

With regard to tract A, the trial court found:

Tract "A" is an area of some seven hundred acres more or less. Located in this tract is a viable pecan orchard, some farm lands, and a substantial amount of lands being used for residential and commercial uses,

along with the Little Rock Airport's proposed expansion. This airport expansion would encompass some 20 acres of the northwest portion of the larger pecan orchard. Here again the lands in this tract are situated along the east belt freeway. Across that structure lies the rapidly developing industrial-port area. These lands have available development streets and all typical municipal utilities.

Various witnesses testified that: (1) there are a variety of land uses in the tract with 145 single-family units in existence for approximately 450 residents; (2) access to the tract exists by city streets; (3) city utilities are available; (4) the Municipal Airport Commission will purchase approximately one-fourth of the pecan orchard as a part of a fifty million dollar expansion of the airport; (5) the tract is surrounded on three sides by present city boundaries and on the fourth side by the Arkansas River; (6) the tract is substantially urbanized; and (7) the biggest part of the tract consists of platted residential development. The findings of the trial judge were not clearly erroneous, and the above constitutes evidence that the tract can be annexed as lands representing the actual growth of the City beyond its legal boundary. While a pecan orchard exists on a part of the tract, it is permissible to annex a tract of land if that tract is more valuable for city purposes than for agriculture, even if the one tract is more valuable for farming purposes than for city purposes. *Fowler* v. *Ratterree,* 110 Ark. 8, 160 S.W. 893 (1913).

The trial court's finding of fact described B as follows:

Tract "B" of the annexed area has located within its boundary a mining pit which is in the northern portion of that particular tract. This is a quarry site. It is situated abutting the freeway and is adjacent to an area of residences to the east, thence into a commercial developed area and is also bounded by a rapidly developing port/industrial-commercial area to the north of the tract.

There was testimony that: (1) the tract has a population

of 369, with 119 single-family units, 21 commercial uses, and one industrial use on 107.9 acres; (2) it lies between two intersections of a major interstate highway and constitutes a peninsula of unincorporated territory; (3) public access to the tract exists by city streets, and it has schools, a fire station, and utilities; (4) the largest part of the tract constitutes platted residential development; (5) a small part of the tract contains a quarry, with the balance of the quarry already being in the City; and (6) the tract is adjacent to the Little Rock Port Authority, and further industrial development is predicted. The tract may be annexed as lands platted and held for sale as municipal lots. A part of a quarry exists upon a segment of the tract, but that quarry is only a small part of an area which is already developed for residential, commercial, and industrial uses. The facts of this case are clearly distinguishable from those in *Saunders* v. *City of Little Rock,* 262 Ark. 256, 556 S.W.2d 874 (1977), where the City sought to annex lands which contained 5,000 to 10,000 acres of mining lands.

With regard to tracts C and G, the trial court found:

> The acreages in tracts "C" and "G" are in part situated within the floodplain and floodway of Fourche Creek. There are low areas in tracts "C" and "G" which will probably never be developed. The City plans to acquire some lowlands and simply leave these lands as they are now and turn them into parks and green belts. The City does have "proposed plans" for draining some of the lands within these areas. Without question, there are lands within these areas which are now developed, and now being used for municipal purposes. Likewise, some of the undeveloped lands within these areas are presently and will continue to be placed to municipal uses within the immediate future. Access is in place, along with the typical municipal utilities.

Witnesses testified that: (1) 8,000 people reside in tract C in 1,956 single-family units and 395 multi-family units; (2) the tract has 82 commercial uses and 19 industrial uses; (3) rapid development of the tract has caused land-use

problems; (4) the area has city water and sewer services as well as municipal utilities; (5) a small part of the tract lies in the floodplain; and one of the city's reasons for annexation of the area is to control development of the floodplain; and (6) the City would establish a "green finger" belt along a major stream in the tract to enhance proper drainage as well as open space and a park.

The testimony about tract G established: (1) there are 2,030 people in 630 single-family units and 31 multi-family units in the 2,615 acre tract; (2) there are 20 commercial uses and 9 industrial uses of the tract; (3) it represents the growth of the City beyond its boundaries; (4) it has sewer and water districts developing without benefit of municipal controls; (5) the City has already purchased 80 acres and plans to acquire 100 to 160 more for the development of parks and for drainage purposes; and (6) the Master Parks Plan includes an impoundment for the control of flood waters. Tract C meets the criteria of furnishing an abode for a densely settled area, and tract G represents the growth of the City beyond its boundaries.

Appellant argues that, since parts of section C and G are in the floodplain and floodway, they are not proper lands for annexation. For authority, he relies on *Saunders* v. *City of Little Rock,* 262 Ark. 256, 556 S.W.2d 874 (1977), and *City of Little Rock* v. *Findley,* 224 Ark. 305, 272 S.W.2d 823 (1954). His reliance on those cases is misplaced as the facts of those cases are distinguishable from the case at bar. Here, only a small part of the tracts lies in the floodplain, and a large part is already developed. In *Saunders,* twelve square miles of floodlands were proposed to be annexed. In addition, the City had no plan for using or draining the floodlands, while the evidence here is that the City has developed an extensive flood control program. In *Findley,* we held that there was substantial evidence to uphold the trial court's finding that lands were inappropriate for annexation. However, we commented that the evidence preponderated in the City's favor.

The trial court's finding of fact described tract K as follows:

In Tract "K" is a region to the west of the present city limits. It is without residential structures of significance. It is in the path of natural expansion of the City's westward development. There is only one small platted area which is in the northwest corner of the tract. There are no water or sewer improvement districts extending into the tract; however, those utilities districts have expanded the eastern boundary of this property.

There was testimony that section K was: (1) under intense development pressure because it is adjacent to Pleasant Valley, a prestigious subdivision; (2) the Pleasant Valley Country Club extends into the tract for approximately one mile; (3) there are condominium developments and estate size lots along Hinson Road in the lower portion of the tract; (4) there are large single-family lots and subdivision developments off Ridgehaven Road in the north part of the tract; (5) it has electricity, sewer, and water services; and (6) it is in need of the City's police powers for zoning and land use controls. The above constitutes evidence that tract K is held for urban development.

The cases cited by appellant as barring annexation are inappropriate. In *Parrish* v. *City of Russellville,* 253 Ark. 1000, 490 S.W.2d 126 (1973), the land was more remote from the City and its services, and only 785 acres of the 6,398 annexed were anything other than farms and forest. In *Vestal* v. *Little Rock,* 54 Ark. 321, 16 S.W. 291 (1891), that part of the land which was located on the north side of the Arkansas River would be taxed but would not receive any benefit from annexation.

The trial court found that:

Tract "O" consists of a very thin strip of totally wild and undeveloped land. Tract "O" is situated between Walton Heights, an area of fine homes, and the Little Maumelle River. The land in Tract "O" is not platted. The terrain is cliff-like upward from the river. The existing access to this 188.3 acres which comprises Tract "O" is presently limited to the extreme

northwest corner of the tract. There exists no streets or roads traversing this property; however, the City is interested in the property as it extends its utilities westwardly; by reason of the Little Maumelle River this area has an attraction as a park site or green belt. The annexation of this tract would extend the city limits to a natural boundary, Little Maumelle River. This area is of significance to the City in its obligation to afford police and fire protection to the residents of Walton Heights and other of its citizens that reside in the area.

Witnesses testified that most of tract O is: (1) a narrow strip of land situated between the Walton Heights subdivision and the Little Maumelle River, with a steep downgrade to the river; (2) it has, in part, a development potential similar to the Walton Heights and Robinwood subdivisions as there is great interest in lots with scenic river views; (3) the riverbank property has a boat ramp which can be developed into a marina; (4) the City has started River Mountain Park, a big metropolitan park which would extend from Murray Park westerly, and it has already purchased 685 acres in the area, including the land on the opposite side of the Little Maumelle River which lies south of the Arkansas River; (5) part of the tract is ideal for the "green finger" concept of open space park land, while another part will serve as a corridor for major water and wastewater utility lines.

It is proper for a city to annex property if it is needed for the purpose of making improvements and if value of the land is derived from actual and prospective use for city purposes. *Brown* v. *Peach Orchard,* 162 Ark. 175, 257 S.W. 732 (1924), and *Kalb* v. *City of West Helena,* 249 Ark. 1123, 463 S.W.2d 368 (1971). Annexation is not prohibited simply because a tract is "rather rugged" and "heavily wooded" with sparse population. *Kalb, supra.*

The order of the circuit court in annexation cases will be upheld unless it is clearly erroneous. ARCP Rule 52. We cannot say the findings by the trial court in this case are clearly erroneous.

Affirmed.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. I must again respectfully dissent. The majority set out the correct law concerning annexations of adjacent territory by cities then promptly forgot what it said and wrote a nice sounding piece of social legislation. The law establishes five criteria, one of which must be met before land is annexed. These five classifications provide that land may be annexed if: (1) it is platted or held for sale or use as municipal lots; (2) whether platted or not, the land is held to be sold as suburban property; (3) the land furnishes the abode for a densely settled community, or represents the actual growth of the municipality beyond its legal boundary; (4) the land is needed for any proper municipal purpose such as for the extension of needed police regulation; or (5) it is valuable by reason of its adaptability for prospective municipal uses. Fifteen tracts of land were included by a single vote. The City of Little Rock provides the residences for about 160,000 people and the area to be annexed contains the residences for about 10,000. When the spokesmen for the city stated they expected to take in $2.00 in taxes from the annexed area for each $1.00 expended they revealed the true purpose of the election. Another reason given was to square up the city boundaries. The record belies this statement because after the new areas are annexed one could stand on the Coleman Dairy property near Asher and University and throw a rock into the unincorporated area. The dairy, the adjacent Worth James property and the Big Rock property extend from near Asher and University across the Fourche bottoms and Arch Street Pike and join other property crossing the old and new Pine Bluff highways into and including College Station. This property was not included in the annexed territory. Certainly College Station meets several of the criteria, yet it was not included. Obviously College Station would not bring in a lot of tax dollars yet it is platted for use as municipal lots and furnishes the abode for a densely settled community. Certainly the first three criteria are met by the property known as College Station. On the other hand tract "O" consists of about 190 acres of rugged rough un-

inhabitable terrain with no roads, houses, utilities or other improvements. There is one abode on the extreme northwest corner which is the only possible building site except the railroad right of way. The city thought it might be able to lend its experience if there were ever a train wreck on the railroad. How this could be done is not shown since the only access, besides the railroad, is by boat or helicopter. One can look down from Walton Heights and see the tract which mostly consists of a hillside with slopes of 45° to 50°. The city does not have money appropriated or even plans for the use of tract "O". There is not one bit of evidence in the record that tract "O" meets any of the five criteria for annexation. This tract is not needed for any municipal purpose according to the testimony of the city's own witnesses. The remonstrants' testimony tended to reveal that this land is not adaptable to any municipal use now known to exist and cannot ever be developed as business or residential property. It is too rugged even for hiking trails. By no stretch of the imagination can tract "O" ever be adapted for proper city uses. The city says it could be used as a green belt — that is what it is and all it ever will be. The city already owns land for parks and recreation at two sites in sight of this tract. These tracts are so large they will not be developed in the foreseeable future.

If one or more of the tracts included in the same annexation election is found to be improperly included then all must fail. *Herrod* v. *City of North Little Rock*, 260 Ark. 890, 545 S.W.2d 620 (1977). Tract "O" would clearly void this election if the law and precedent were followed.

Much of the land included is used exclusively for agricultural and horticultural purposes and, according to the testimony, this is presently the highest and best use for such property. Such lands are unsuitable for annexation in accordance with Ark. Stat. Ann. § 19-307.1 (Repl. 1980) and *Saunders* v. *City of Little Rock*, 262 Ark. 256, 556 S.W.2d 874 (1977) (*Saunders II*).

Without so stating the majority opinion has wiped out the law and precedent and part of the Constitution of Arkansas in upholding this annexation. Article 2, Sections

22 and 23 prevent annexation for the purposes of taxation only. It has long been held by this court that owners of land taken into the cities must derive some benefits or the annexation violates Article 2, Section 22 of the Constitution of Arkansas. *Saunders II,* supra; *Parrish* v. *City of Russellville,* 253 Ark. 1000, 490 S.W.2d 126 (1973); *Town of Ouita* v. *Heidgen,* 247 Ark. 943, 448 S.W.2d 631 (1970).

Some of the land included in this annexation has been involved in annexation attempts at least since *City of Little Rock* v. *Findley,* 224 Ark. 305, 272 S.W.2d 823 (1954). Some of this same land was the object of the annexation attempts in the cases of *Saunders* v. *City of Little Rock,* 257 Ark. 195, 515 S.W.2d 633 (1974) (*Saunders I*) and *Saunders II.* Those attempts were declared void by this court. The law has not been changed and some of the land has not changed and probably never will. Admittedly one of the tracts being annexed contains a large productive pecan orchard and is being put to its highest and best use even though the city hopes to condemn part of it for an airport runway and therefore believes the highest and best use may be for other purposes. The annexation statute specifically prohibits annexation of such land. The majority actually relies on *Fowler* v. *Ratterree,* 110 Ark. 8, 160 S.W. 893 (1913) in approving this tract as meeting one of the five criteria for classes of property subject to annexation. We have decided many many cases since *Fowler* and none of them are cited. The current law on annexation is not even mentioned in regard to tract "A", the land containing the pecan orchard. I think it is not mentioned because it unequivocally prohibits annexation of this tract and would, standing alone, void the annexation of all these tracts.

The most astonishing statement in the majority opinion is this: "The facts of this case are clearly distinguishable from those in *Saunders* v. *City of Little Rock,* 262 Ark. 256, 556 S.W.2d 874 (1977), where the City sought to annex lands which contained 5,000 to 10,000 acres of mining lands." Much of the same mining land is included in the present case. The facts in *Saunders* and the present case are exactly the same except that the present annexation territory has excluded a part of the mines and some of the flood plains

land. Otherwise, only the names have changed. How can it be that these same lands were unsuitable for annexation in *Findley, Saunders I* and *Saunders II,* but are suitable now without change of law or the nature and use of the lands? Tract "B" contains a mining pit for which no use is planned by the city other than that it might make a good landfill (garbage dump). The pit being adjacent to the Airport Holiday Inn, such use is unlikely. The line on this tract was drawn down the middle of a street. Therefore, the sheriff will patrol one side of the street and the city the other. It is most interesting to note that this line is carefully drawn to take in only the improved parts of College Station while excluding 95% of the residential area which undisputedly is the abode for a densely settled community and is all either held for sale or platted in lots. More police protection is needed in the small excluded area than any spot in the county. Naturally this area would produce very little revenue and would demand the use of much resources. The only difference in the flood plains land here and in previous annexation attempts is that the land mass differs. Flood land included in the present case occupies hundreds of acres of land mass. The majority erroneously holds that the city has extensive plans for flood control. These so-called plans started with the United States Corps of Engineers back in the 1920's. The city has contributed to the problems of flooding rather than helping to solve them. In any event controlling floods is not one of the reasons cities are allowed to annex.

Cities are creatures of the legislature. They have neither existence nor power apart from the creator except such as may be given by the Constitution. *City of Piggott* v. *Eblen,* 236 Ark. 390, 366 S.W.2d 192 (1963). The creator has given cities the power to annex lands provided certain conditions are met. These conditions are expressly stated in Ark. Stat. Ann. § 19-307.1. Although the majority attempts to justify the propriety of the annexation of each tract, it does not even point out how the tracts meet the criteria. The present law is merely a codification of the law as expressed in the landmark case of *Vestal* v. *Little Rock,* 54 Ark. 321, 16 S.W. 291 (1891). For almost one hundred years the *Vestal* principle has controlled our decisions and the Acts of the General Assembly. Now the majority has with one fell swoop

obliterated all that has gone before in matters relating to municipal annexations. The opinion would be more useful and straightforward if it announced it was overruling all prior cases and declaring the annexation statute unconstitutional as well as small portions of the Constitution.

It would serve no useful purpose for me to continue. To convince this court of the error of its ways would be no less a problem than trying to convince cities not to annex but to develop from within. I will conclude by saying the City of Little Rock will not need to acquire outside property for garbage dumps for many years to come.