Charles T. MERRITT, Vance K. Wesley, Johnnie Jones, Earl T. Merritt, Elwood Roberts, Ralph Gabeheart, Ruth B. Gabeheart, and William Pierce, Appellants/Cross-Appellees,

v.

CITY OF CAMPBELLSVILLE, Kentucky, Mayor Robert Miller, James Bell, Frank Metzmeier, Charles Shaw, Richard Jeter, Dr. R.D. Ingram, John Edrington, William Toby, Delbert Ballard, Jerry Kibbons, Alvin Hardy and Isaac T. Newcomb, Appellees/Cross-Appellant.

Court of Appeals of Kentucky.

July 6, 1984.

As Modified July 13, 1984.

Ordered Published and Rehearing Denied Nov. 2, 1984.

Fred Faulkner, Jr., James C. Miller, Campbellsville, for appellees/cross-appellants.

W. Patrick Mulloy, II, Louisville, for appellants/cross-appellees.

Before HAYES, C.J., and MILLER and WILHOIT, JJ.

MILLER, Judge.

This is an appeal by persons who protest the annexation of an area by the City of Campbellsville, pursuant to KRS 81A.400 et seq. Campbellsville is a city of the third class. KRS 81.010. The circuit court denied relief to protestants, thereby precipitating this appeal. Appellants/cross-appellees raise several questions concerning the propriety of the annexation, to wit: (1) inadequate notice of the City's intention to annex [KRS 81A.420, 83A.060(9), 424.130 and 140]; (2) the annexation was invalid on the merits as the property annexed was not "fit" for annexation [KRS 81A.410]; and, (3) the statutory scheme providing for annexation in KRS 81A.420 abridges Sections 2 and 6 of the Kentucky Constitution and the 14th Amendment to the U.S. Constitution. Appellees/cross-appellants question the standing of appellants/cross-appellees to bring this action under KRS Chapter 418 (Declaratory Judgment Act), and claim a failure to name indispensable parties under KRS 418.075. We easily dismiss the contentions of cross-appellants as without merit. Our state is committed to the proposition that persons adversely affected by an ordinance may directly attack same as being contrary to the statutory scheme or constitution, even though they failed to remonstrate when the ordinance was enacted. *See City of Erlanger v. American Isowall Corp.*, Ky.App., 607 S.W.2d 128 (1980); KRS 418.-045. The rule is that an improperly enacted ordinance cannot stand as being merely voidable. It is void. *See Ridings v. City of Owensboro*, Ky., 383 S.W.2d 510 (1964). The case of *King v. City of Corbin*, Ky., 535 S.W.2d 85 (1976), cited by cross-appellants, is not in point. There, the assaulting taxpayer did not live in the affected (annexed) territory.

We address the adequacy of notice. The ordinance describing the property to be annexed and stating the intention of the City to annex same, as required by KRS 81A.420, received its second and final reading [KRS 83A.060(4)] on February 9, 1981. Publication, as required by KRS 83A.060(9), was had on February 12, 1981, in the *Central Kentucky News Journal*, thus validating the "proposal to annex" ordinance. From this point in time, KRS 81A.420(2) provides for a period of sixty (60) days for "resident voters or owners of real property within the limits of the territory proposed to be annexed" to file an opposition petition with the mayor. "Notice" of the right to oppose the contemplated annexation by filing the opposition petition is required to be given by publication. KRS 424.130. The publication shall specifically state the time and place of taking action against the proposed ordinance. KRS 424.140(4).

On April 2, 1981, with the advertisement specifically stating that it was complying with "the requirements of K.R.S. Chapter 424," the City of Campbellsville caused the entire ordinance to be republished in the *Central Kentucky News Journal*. On this occasion, there appeared at the foot of the ordinance a *verbatim* recitation (including history) of KRS 81A.420, which provides as follows:

81A.420. ORDINANCE DECLARING INTENT TO ANNEX—ELECTION ON PROPOSED ANNEXATION—ANNEXATION ORDINANCE, WHEN CITY MAY ENACT.—

(1) Whenever a city desires to annex unincorporated territory, the legislative body of the city proposing to annex shall enact an ordinance stating the intention of the city to annex. Such ordinance shall accurately define the boundary of the unincorporated territory proposed to be annexed, and declare it desirable to annex the unincorporated territory.

(2) If following the publication of the annexation ordinance pursuant to subsection (1) of this section and within sixty (60) days thereof, or if in any annexation proceeding where the annexing city has not adopted a final annexation ordinance, within sixty (60) days following July 15, 1980, fifty percent (50%) of the resident voters or owners of real property within the limits of the territory proposed to be annexed petition the mayor in opposition to the proposal, an election shall be held at the next regular election occurring at least sixty (60) days after the petition is presented to the county clerk.

(a) The mayor of the city shall deliver a certified copy of the ordinance to the county clerk of the county in which the territory proposed to be annexed is located, who shall have printed on the ballot provided for use in each precinct embraced in whole or in part within the territory proposed to be annexed the question: "Are you in favor of being annexed to the City of _____?" If only a part of any precinct is embraced within the territory proposed to be annexed only persons who reside within the territory proposed to be annexed shall be permitted to vote. The clerk shall cause the sheriff or sheriffs to deliver to the election officers in each precinct in the appropriate counties copies of the ordinance proposing to annex.

(b) If less than seventy-five percent (75%) of the qualified voters in the area to be annexed oppose annexation, the unincorporated territory shall become a part of the city.

(c) If seventy-five percent (75%) or more of the qualified voters in the area to be annexed oppose annexation, the ordinance proposing annexation shall become ineffectual for any purpose.

(3) In not less than sixty (60) days after the enactment of the ordinance, if no petition has been received by the mayor as set out herein, or within sixty (60) days of the certification of election results in which less than seventy-five percent (75%) of the qualified voters in the area opposed annexation, the legislative body may enact an ordinance annexing to the city the territory described in the ordinance. Upon the enactment of this ordinance, the territory shall become part of the city for all purposes. (Enact. Acts 1980, ch. 303, § 3, effective July 15, 1980.)

On April 6, 1981, the mayor of Campbellsville was presented with a number of petitions protesting the annexation.[1] At a meeting held on April 20, 1981, the mayor of Campbellsville announced that the number of protestants represented by the petitions was insufficient to require a referendum on the question of annexation. Thereafter, the city proceeded to annex the territory by ordinance. Official annexation was accomplished on May 4, 1981.

■ The question for our consideration is whether the verbatim publication of the entire statute (KRS 81A.420) constituted sufficient notice in light of KRS 424.130 and 424.140(4), so as to give interested parties a fair opportunity to oppose the annexation. We think it did not, and for this reason the annexation was invalid. *See Wakefield v. City of Shelbyville*, Ky. App., 563 S.W.2d 756 (1978); *O'Hara v. City of South Fort Mitchell*, Ky., 290 S.W.2d 455 (1956). One need only read the ordinance/statute publication to note its confusion, even to a legal mind. As a practical matter, we believe the publication of the statute *in toto* to have more likely misled would-be protestants into believing that they had "60 days" from the date of *that* publication in which to file petitions of protest. In short, many protestants could

1. The present litigation was commenced on April 7, 1981.

have been lulled into inaction, thereby depriving themselves of the 50% necessary to bring about a referendum upon their cause. To say the least, the publication of the entire statute does not, in our opinion, reasonably inform the general public of the time frame for protestation. KRS 424.-140(4).

In preference to giving the public notice by publishing KRS 81A.420 in its entirety, we think a simple "notice" publication *conforming to KRS 424.130(1)(b) and KRS 424.140*, informing the interested public of their right to protest within 60 days from February 12, 1981, (or, on or before April 13, 1981) would have been sufficient and not reasonably susceptible to misinterpretation.

■ We now address the question of the merits of the annexation. We agree with the findings of the trial court that the property sought to be annexed was fit for annexation within the meaning of KRS 81A.410. CR 52.01. This is not the type of "corridor annexation" condemned in *Ridings, supra.* The corridor involved in the case *sub judice*, contrary to the corridor in *Ridings*, serves a legitimate municipal purpose. It can be developed and, in fact, serves as a corridor for "water mains." In *Ridings*, the corridor annexed was that of a public roadway and served no purpose whatsoever, other than to form a contiguity of the annexed property with the original city boundary. Thus, the facts are distinguishable.

We now address the constitutional contentions. They are without merit. The constitutionality of the statute in question has been upheld. *See Louisville Shopping Center v. City of St. Matthews*, Ky., 635 S.W.2d 307 (1982).

For the foregoing reasons, the judgment of the Taylor Circuit Court is vacated, and this cause is remanded for a judgment nullifying the annexation.

All concur.