**E.B. GRIFFIN, Appellant,**

v.

**CITY OF ROBARDS and Marion Lee Eakins, Appellees,**

**and**

**City of Robards, Henderson County, Kentucky Marion Lee Eakins, et al., Appellants,**

v.

**E.B. Griffin, Other Resident Opponents to the Incorporation of Robards, et al., Appellees.**

Nos. 97–SC–1101–TG, 97–SC–1103–TX.

Supreme Court of Kentucky.

April 22, 1999.

Carl B. Boyd, Jr., Sheffer Hoffman, Henderson, Kentucky, for E.B. Griffin.

Logan B. Askew, Scott P. Kasierski, White, White, Askew & Crenshaw, Hopkinsville, Kentucky, for City of Robards, Henderson County, Kentucky and Marion Lee Eakins.

STEPHENS, Justice.

The matter before this Court involves the legality of the incorporation of the City of Robards in Henderson County, Kentucky. On July 22, 1997, a petition was filed with the Henderson Circuit Court pursuant to KRS 81.050 *et seq.* to incorporate an area in southern part of the county. There is no issue that the document filed complied with all the statutory requirements. The Henderson Circuit Court set the incorporation hearing for September 9, 1997. On August 28, 1997, opponents of incorporation filed a petition in opposition to incorporation. On September 3, 1997, the opponents of incorporation filed a Motion to Dismiss or Modify the petition to incorporate. At a hearing on September 5, 1997, the trial court overruled the opponents' motion to dismiss, but reserved ruling on the modification request. The opponents sought to remove a small area containing thirteen registered voters from the area to be incorporated on the basis that it was non-contiguous.

On September 9, 1997, the hearing on the petition to incorporate was held. The court employed a bifurcated process in conducting the hearing. First, the court examined whether the procedural steps for incorporation had been properly followed. KRS 81.050. Second, the court heard arguments on whether the necessary substantive criteria for incorporation had been met. KRS 81.060.

The parties stipulated that the requirements of KRS 81.050(1) had been met; however, opponents raised the issue of whether that portion of the petition which contained the list of signatures and addresses was legitimate since the other items required for the petition were not attached when the signatures were affixed to the list. The trial court found that the procedural requirements for incorporation had been met and proceeded to review the substantive requirements of incorporation. The trial court heard testimony from three witness from both the proponents and the opponents. The trial court ordered each side to submit memoranda on this issue.

On October 8, 1997, the trial court granted opponents' motion to modify the territory to be incorporated by striking that contested portion of the territory con-

taining the thirteen registered voters. On November 25, 1997, the Henderson Circuit Court issued an order incorporating the City of Robards, Kentucky. Opponents appealed and proponents cross-appealed the order of October 8, 1997. The proponents filed a motion for transfer to the Supreme Court which this Court granted.

## I. PROCEDURAL REQUIREMENTS FOR INCORPORATION

KRS 81.050(1) provides as follows:

(1) Proceedings to incorporate a city shall be commenced by a petition being filed with the circuit clerk of the county in which the area to be incorporated is located. The petition shall contain:

(a) The signatures and addresses of:

  1. A number of registered voters equal to two-thirds (⅔) of the voters of the proposed territory, or

  2. A number of real property owners, the sum total of whose assessed value of real property is equal to at least two-thirds (⅔) of the assessed value of the real property in the proposed territory;

(b) A statement of the boundaries proposed and the number of residents;

(c) An accurate map of the proposed territory;

(d) A detailed statement of the reasons for incorporation including the services sought from the proposed city;

(e) A description of the existing facilities and services within the proposed territory; and

(f) A statement of the form of government under which the city will operate if incorporated.

As noted, it was stipulated that the proponents of incorporation filed a document which met all the requirements of KRS 81.050(1). Opponents assert that because the list of signatures and addresses compiled as per KRS 81.050(1)(a) was not attached to the items listed in KRS 81.050(1)(b)–(f) at the time of the signing, the entire petition must be stricken as invalid.

The opponents discuss the confusion which was generated by the process employed in this case. They also stated that it "would have been no significant burden" to have items (a)–(f) affixed at all times. With regard to the issue of confusion, we find no evidence of any confusion, much less any prejudice, in this case. During the public hearings the trial court gave all parties multiple opportunities to withdraw their names from the petition favoring incorporation. Opponents are unable to demonstrate that the final tally of 303 persons in favor of incorporation was not in fact the number of persons actually favoring incorporation. The fact that persons changed their minds and decided to oppose or support incorporation after having previously signed a document favoring the opposite side strongly suggests that no prejudice occurred. Everyone was given a chance by the trial court to make sure that their name was in the correct place. Opponents have offered nothing to refute the final tally's legitimacy.

Opponents' statement that it would not be a burden to affix all attachments has no relevance in this proceeding. Where is there language in our Commonwealth's Constitution or Statutes that states that as long as a procedural step is "no significant burden" an opposing party has a right to demand its performance?

KRS 446.080 has several provisions dealing with the manner in which the judiciary is to construe statutes. First, all laws are to be "liberally construed with a view to promote their objects and carry out the intent of the legislature." KRS 446.080(1). Second, "[a]ll words and phrases shall be construed according to the common and approved usage of language." KRS 446.080(4). There is no language in KRS 81.050 that expressly requires that items (b)–(f) all be in existence when the signatures are affixed to item (a). Rather the statute requires that items (a)–(f) be sub-

mitted together when the document is filed with the circuit clerk. There is no discussion of how the process of obtaining signatures is to be performed.

■ In their initial briefs both opponents and proponents of incorporation employ the term "petition" with a certain lack of precision. The "petition" is the document which proponents of incorporation must file with the court. KRS 81.050(1). It contains the items listed in KRS 81.050(1)(a)–(f). The list of signatures and addresses of the persons supporting incorporating is but one of the six items included in the petition. KRS 81.050(1)(a).

■ Whether we believe that having items (a)–(f) affixed together throughout the entire process of gathering signatures is a good idea is not the appropriate test to be applied. Our job is to interpret the statutes, not amend or enhance them. Since there is no discussion of how the signatures are to be acquired, we cannot engraft one on top of the existing statute. We see no statutory requirement that items (b)–(f) be supplied to individuals when they affix their signatures to item (a). We note that trial court first considered whether the requirements of KRS 81.050 had been met by proponents. The trial court also took pains to make sure that all those who had signed favoring incorporation did in fact support it. Opponents have offered no evidence that any one of the three hundred and three persons did not support incorporation.

■ In their reply brief, opponents engage in an extensive and potentially exhaustive discussion of the meaning of the word petition. Such a discussion is superfluous since the word is absolutely and precisely defined by KRS 81.050(1). This Court is not permitted to redefine the meaning of a word in a statute when the General Assembly has already expressly defined the word. *Hoy v. Kentucky Indus. Revitalization Auth.*, Ky., 907 S.W.2d 766, 769 (1995) (holding that a court cannot interpret a statute at variance with its stated language).

■ In a matter such as the incorporation of a municipal area, strict adherence to the express terms of the statute is necessary. *Donald v. City of Glenview,* Ky.App., 723 S.W.2d 861, 863 (1986). In this case proponents have followed the explicit dictates of KRS 81.050(1) to the letter. Accordingly, since we see no explicit requirement governing how the signatures for KRS 81.050(1)(a) are to be obtained, we believe it is inappropriate for us to create additional requirements the General Assembly did not draft.

## II. SUBSTANTIVE REQUIREMENTS FOR INCORPORATION

■ The second argument against incorporation is that the City of Robards does not meet the criteria outlined in KRS 81.060(1)(a)–(e). The Kentucky General Assembly established the following requirements for the incorporation of a new city:

a. At least three hundred (300) persons reside in the territory sought to be incorporated;

b. Incorporation constitutes a reasonable way of providing the public services sought by the voters or property owners of the territory, and there is no other reasonable way of providing the services;

c. The territory is contiguous;

d. The territory is able to provide necessary city services to its residents within in a reasonable period after its incorporation; and

e. The interest of other areas and adjacent local governments is not unreasonably prejudiced by the incorporation.

KRS 81.060(1)(a)–(c). In assessing whether the requirements of KRS 81.060(1)(a)–(e) have been met, the circuit court is given the following criteria:

a. Whether the character of the territory is urban or rural;

b. The ability of any existing city, county or district to provide needed services;

c. Whether the territory and any existing city are interdependent or part of one community;

d. The need for city services in the territory;

e. The development scheme of applicable land-use plans;

f. The area and topography of the territory; and

g. The effect of the proposed incorporation on the population growth and assessed valuation of the real property in the territory.

KRS 81.060(2)(a)–(g). These criteria are illustrative, rather than exhaustive. KRS 81.060(2).

In applying these factors, there is no dispute that at least 300 persons live in the territory. KRS 81.060(1)(a). However, there is a great dispute about whether incorporation is a reasonable way to provide the services sought by the proponents and if there is no reasonable way the existing governmental structure can provide them. KRS 80.060(1)(b), 80.060(2)(b).

■ Since 303 of the 387 registered voters signed the petition favoring incorporation, there can be no question that those persons favoring incorporation believe that the services presently provided are not sufficient for their needs. When over three-quarters (¾) of a given community asserts that the services being provided are insufficient, this Court believes itself obliged to defer to the community's view and presume its validity unless otherwise controverted. This clearly creates a strong presumption in favor of the belief that KRS 81.060(1)(b) has been satisfied. For opponents to successfully overcome this presumption, they must offer evidence which totally refutes the proposition that services are insufficient. We note that the statutes do not specify what services are to be considered. Accordingly, any services provided by government can be considered by the trial court.

■ We take this opportunity to point out that there are two parts to any service. First, there is the basic service itself: for example, street repairs, snow removal, police protection. Second, there is the method of delivery of the service. The delivery of a service is the quality and type of service given to the community. So the fact that a county police force exists or that snow removal is presently performed does not necessarily mean that such a service cannot be forwarded as a legitimate basis for incorporation. Once such a service has been forwarded, the burden is on the opponent to rebut the presumption that the desire for the service is not legitimate and that such a service can be delivered by the existing governmental structure. The mere fact that a service exists, in some form or another, does not mean that proponents of incorporation cannot desire it be delivered in a different or more responsive fashion.

Proponents claim that snow removal, garbage removal, sanitary sewers, blocked drainage culverts, streetlights, sidewalks, public recreation activities, public senior citizens' activities, and natural gas service are all services they seek to acquire or improve. If opponents seek to discredit proponents' claims, they must offer actual evidence which refutes them, for example, items such as a statistical study demonstrating the lack of any need for trash removal, numerical evidence that the responsiveness of snow removal was satisfactory or the like. Conclusory statements without evidentiary support are insufficient to override the trial court's findings on this issue. Opponents offer no proof which would even come close to rebutting the presumption that proponents' claims are valid.

■ Self-governance was the basis for the foundation of this nation. Self-governance gives a community, particulary a small rural community such as Robards,

much greater freedom to determine its own destiny. Decisions regarding the effectiveness and quality of city services, ranging from snow and trash removal to the degree of police protection, are in the hands of the local citizenry. If every service stated on the petition was already offered to the citizens of Robards and the citizens simply wanted a greater degree of control over the services' operations, this Court would support such a decision. Surely local control and determination is the ultimate service which any community seeks.

### III. DEFINITION OF WHAT CONSTITUTES CONTIGUOUS TERRITORY

■ As part of its order on October 8, 1997, the Henderson Circuit Court struck a portion of the territory to be incorporated because it was not contiguous. KRS 81.060(1)(c) requires that all territory to be incorporated must be contiguous. Proponents cross-appealed this decision. The basis for the striking of territory referred to as West Robards was that it was connected to Robards by only a strip of highway. The trial court found that to permit inclusion of the highway, it was necessary that the highway serve some municipal purpose, which it did not. Accordingly, the trial court removed West Robards from the area to be incorporated.

The issue of corridor, shoestring or strip contiguity was last dealt with by this Court in *Ridings v. City of Owensboro*, Ky., 383 S.W.2d 510 (1964). In that case, the determination of whether a roadway which connected two pieces of land was contiguous was based on whether the "corridor itself ha[d] some municipal value or serve[d] some municipal purpose." *Id.* at 512. Proponents claim that the corridor does have some municipal value because the property owners of West Robards seek natural gas, sanitary sewers and fire hydrants. None of these items presently exist. Opponents speculate that the only reason that West Robards was included in

the territory to be incorporated was that one of the principal supporters of incorporation lived there. While this information is certainly informative, it is also irrelevant to any discussion of whether West Robards is contiguous to Robards.

■ Generally, courts disfavor finding one territory to be contiguous to another territory when the only link between the two is a narrow corridor. *Potvin v. Chubbuck*, 76 Idaho 453, 284 P.2d 414 (1955); *Watson v. Doolittle*, 10 Ohio App.2d 143, 226 N.E.2d 771 (1967); *People ex rel. Hamilton v. Santa Barbara*, 205 Cal. App.2d 501, 23 Cal.Rptr. 240 (1962). Courts have repeatedly held that when the only purpose the corridor serves is to create the requisite contiguity, such a subterfuge cannot support incorporation or annexation. *Ridings v. Owensboro*, Ky., 383 S.W.2d 510 (1964). *See also Middletown v. McGee*, 39 Ohio St.3d 284, 530 N.E.2d 902 (1988); *Mount Pleasant v. Racine*, 24 Wis.2d 41, 127 N.W.2d 757 (1964); *Clark v. Holt*, 218 Ark. 504, 237 S.W.2d 483 (1951). Proponents failed to offer any tangible evidence which would refute the presumption that incorporation of the corridor is merely to connect Robards and West Robards as opposed to having some municipal value or purpose. *Ridings*, 383 S.W.2d at 512.

■ *Ridings* requires that there be a concrete and tangible municipal value or purpose existing at the time incorporation or annexation of the corridor of territory is sought. *Id.* Any other analysis would permit a finding of contiguity in virtually any case in which such a service *could be* provided. Accordingly, mere speculation that such services might be provided is not a sufficient basis for a finding of contiguity in an incorporation or annexation case. *See Merritt v. City of Campbellsville*, Ky. App., 678 S.W.2d 788, 791 (1984) (finding contiguity between unincorporated territory and incorporated territory by way of corridor in which water mains were located).

■ When such a tangible step as, for example, the laying of water mains occurs, at that point and no sooner might it be appropriate to permit a finding of contiguity between the corridor and the territory for which annexation is sought. *See id.* (noting that, unlike the barren corridors in *Ridings,* municipal use had already occurred). If a municipal value or purpose occurs in the corridor, then a finding of contiguity may well be warranted as in *Merritt. Id.* If, however, only a barren corridor exists, there is no contiguity. *Ridings,* 383 S.W.2d at 512.

Accordingly, we find that the trial court correctly applied the law as enunciated in *Ridings* and clarified in *Merritt.* The territory of West Robards and the corridor which connects it to Robards are clearly not contiguous to Robards. If the circumstances surrounding the use of the corridor change, then it is certainly possible for the contiguity issue to be revisited by the appropriate court.

## CONCLUSION

Following our review we affirm the trial court in all respects. First, it is clear that all procedural requirements of incorporation were strictly followed. Second, the findings of the trial court do not demonstrate an abuse of discretion and, in fact, are extensively supported by the evidence. The trial court's finding that the substantive requirements of incorporation were met and that the area of West Robards should not be included in the incorporated area are both strongly supported. Accordingly, the judgment of the Henderson Circuit Court is affirmed in all respects in this matter.

All concur except WINTERSHEIMER, J., who files a separate dissenting opinion.

WINTERSHEIMER, Justice, dissenting.

I must respectfully dissent because the initial petition failed to meet the statutory requirements of KRS 81.050, and conse-

quently, the entire proceeding is fundamentally and fatally flawed.

The document that was circulated by the proponents of incorporation contained very little essential statutory information. Certainly, it was signed by the apparent requisite number of persons who indicated that they were registered voters, over 18 years of age and resided in the area to be incorporated. However, the other items as required by KRS 81.050 from Sections (b) through (f) were not included. At best, the signers were expressing their desire to incorporate. There is no indication on the petition document that the signers had any knowledge of what services were planned, exactly what area was involved, or what form of government the proposed city would have.

The majority opinion ignores the fact that the actual documents signed by the individual seeking incorporation is fundamentally deficient. The statute does not contemplate a kind of substantial compliance with signatures annexed or incorporated by reference.

The petition form can be a valuable tool in a representative democracy. However, such an instrument must provide for full disclosure. The statute in question, KRS 81.050 provides in pertinent part as follows: That the petition shall contain the following items in addition to the names and addresses of the signers.

(b) A statement of the boundaries proposed and the number of residents;

(c) An accurate map of the proposed territory;

(d) A detailed statement of the reasons for incorporation including the services sought from the proposed city;

(e) A description of the existing facilities and services within the proposed territory; and

(f) A statement of the form of government under which the city will operate if incorporated.

The purpose of inclusion of Sections (b) through (f) is to inform those who are

requested to sign the petition so that they might do so with the full knowledge and understanding of their actions and the consequences related thereto. Failure to include the entire statutory menu on the document initially signed is fatal to its validity.

The majority opinion correctly notes that in the area of incorporation, strict adherence to the strict terms of the statute is necessary. Here, it is clear that this strict adherence to the express terms of the statute was not properly obtained.

The specific execution requirement of the statute does not unduly hamper municipal incorporation efforts. There are no Kentucky cases dealing directly with the issue presented in this appeal. It should be obvious that the concept of a petition containing signatures is that of a document which people sign to express their support of ideas and principles set out in the petition. In this instance, the document signed totally lacked any relevant details regarding the proposed incorporation.